**In re THRIFTWAY AUTO SUPPLY, INC., Debtor.**

**CITIZENS NATIONAL BANK & TRUST CO., Appellant,**

v.

**STAR AUTOMOTIVE WAREHOUSE, INC., Appellee.**

**No. Civ.–93–1560–A.**
**Bankruptcy No. 93–1054–BH.**

United States District Court,
W.D. Oklahoma.

Oct. 19, 1993.

("UCC"), Okla. Stat. tit. 12A, § 9–402, to perfect its credit interest, despite the fact that it was filed under the debtor's trade name only; and whether Citizens conducted a reasonable search of Oklahoma's electronic filing system based solely on the debtor's corporate name. We affirm the ruling of the bankruptcy court and hold that, despite its shortcomings, Star's filing was not "seriously misleading" and, therefore, complies with the requirements of Oklahoma law. *See* Okla. Stat. Ann. tit. 12A, § 9–402(8). We also hold that, given Oklahoma County's use of a computerized filing system and commercial realities, Citizens' search was not reasonably diligent.

# I

## FACTS

The facts of this case are not in dispute by either party. Moreover, the district court, in the context of a bankruptcy appeal, sits in the role of an appellate court and, therefore, is bound by the factual findings of the bankruptcy court unless clearly erroneous. *See In re Branding Iron Motel, Inc.*, 798 F.2d 396 (10th Cir.1986).

Debtor, Thriftway Auto Supply, Inc ("Thriftway"), is an Oklahoma corporation that filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 12, 1993. Star is a Texas wholesaler of automotive parts, accessories and supplies which extended credit to Thriftway in October of 1989. As part of the credit agreement, Thriftway gave Star an interest in its inventory, fixtures, accounts receivable and contract rights. Star then filed a UCC financing statement with the Oklahoma County Clerk's Office on October 11, 1989, listing Thriftway as the debtor under its trade name, "Thriftway Auto Stores."

Later, from March 1991 to September 1992, Thriftway entered into a series of credit agreements with Citizens. Citizens also filed a UCC financing statement with the Oklahoma County Clerk's Office on March 15, 1991, listing the debtor under Thriftway's legal corporate name, "Thriftway Auto Supply, Inc." In conjunction

James Hasty Bellingham, McClelland Collins Bailey, Bailey & Bellingham, Oklahoma City, OK, Harold Logsdon, Baker Logsdon Schulte & Cross, Kingfisher, OK, for appellant.

Gary S. Chilton, Andrews Davis Legg Bixler, Milsten & Price, Oklahoma City, OK, for appellee.

## *OPINION*

ALLEY, District Judge.

Appellant, Citizens National Bank and Trust Co. ("Citizens"), appeals from a ruling granting summary judgment to appellee, Star Automotive Warehouse, Inc. ("Star"), in which Star was given priority as first secured creditor over Citizens. 156 B.R. 300.

The issues presented on appeal are whether the financial statement filed by Star was sufficient under Oklahoma's version of the Uniform Commercial Code

with its filing for the March 1991 loan, Citizens requested a search of filings from the Oklahoma County Clerk's Office under Thriftway's corporate name only. This search did not reveal Star's lien interest in Thriftway, even though it was on file. However, a search using either "Thriftway" or "Thriftway Auto" would have found the Star filing under "Thriftway Auto Stores."

On February 1, 1993, Star filed an Adversary Complaint in the United States Bankruptcy Court for the Western District of Oklahoma against Citizens and the Trustee seeking a determination of the priority status of liens against Thriftway's assets. Both Star and Citizens then filed motions for summary judgment in which each claimed to have priority over the other as the first secured creditor. In particular, Citizens objected to Star's motion, stating that it should have priority because Star failed to file its financial statement under Thriftway's true legal name. Citizens asserted that Star's error was "seriously misleading," thereby making the filing defective under Oklahoma law. *See* Okla. Stat. tit. 12A, § 9–402. The bankruptcy court, however, granted Star's motion, finding that Star's failure to use Thriftway's legal name was not seriously misleading and that Citizens had failed to conduct a "reasonably diligent" search of the Oklahoma County filings by conducting a search limited to Thriftway's corporate name. The court then gave Star first priority over all other secured creditors, including Citizens.

## II

### DISCUSSION

■ "The legal conclusions of the bankruptcy court are subject to *de novo* review by a district court and the court of appeals." *In re Herd*, 840 F.2d 757, 759 (10th Cir.1988). In granting summary judgment, the bankruptcy court concluded, as a matter of law, that Star's filing satisfied the requirements for financial statements under Oklahoma law and that Citizens failed to conduct a "reasonably diligent" search of the Oklahoma County filing records. These essentially intertwined issues form

the basis of Citizens' appeal and this Court's review.

In Oklahoma, the formal requirements for what should be included in a financial statement under the UCC have been codified in Okla. Stat. tit. 12A, § 9–402. "A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral." Okla. Stat. Ann. tit. 12A, § 9–402(1) (West 1963 & 1993 Supp.). Moreover, "[a] financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or the names of the partners." Okla. Stat. Ann. tit. 12A, § 9–402(7) (West 1963 & 1993 Supp.). Finally, "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not *seriously misleading*." Okla. Stat. tit. 12A, § 9–402(8) (West 1963 & 1993 Supp.) (emphasis added).

There is no issue that Star complied with all the formal requirements of § 9–402(1). Rather, the sole question regarding the validity of Star's financing agreement concerns whether Star's use of Thriftway's trade name, "Thriftway Auto Stores," was "substantially misleading" under § 9–402(8). What constitutes "substantially misleading" has been the subject of much litigation and opinion writing for many years. *See* William C. Hillman, *What's in a Name: The U.C.C. Filing System in the Courts*, 44 Okla. L.Rev. 151, 156–57 (1991) (discussing the contrasting views held by courts on the issue of when a name is seriously misleading). The most restrictive view is that any deviation from the legal name of a debtor renders a filing inadequate. For example, in *In re McGovern Auto Specialty, Inc.*, 51 B.R. 511 (Bankr. E.D.Pa.1985), the Court found that a financing statement that listed the debtor as "McGovern Auto & Truck Parts, Inc.,"

rather than the debtor's legal name, "McGovern Auto Specialty, Inc.," was seriously misleading. In so ruling, the court noted that resolving the question of what was "seriously misleading" turned on both the purpose of the UCC filing system in protecting creditors and the distinctiveness of the names at issue. *Id.* at 514. In particular, the court noted that the type of index used would be an additional factor in determining whether or not an error would be misleading. *Id.* For example, a search conducted by computer may end up being more restrictive than one conducted by leafing through file cards because of the way the particular computer system is designed. Other courts have also found that where misspelled or substantially different trade names were used, the financial agreement filings failed because the errors were seriously misleading. *See In re Greenbelt Cooperative,* 124 B.R. 465 (Bankr.D.Md. 1991) (security interest was unperfected because of the use of substantially different trade name); *In re Wardcorp, Inc.,* 133 B.R. 210 (Bankr.S.D.Ind.1990) (error in debtor's name used in filing was "seriously misleading" because it would require searching in a different place from debtor's legal name); *Chemical Bank v. Title Services, Inc.,* 708 F.Supp. 245, 249 (D.Minn. 1989) ("Policy considerations behind the U.C.C. notice requirement support this court's contention that a searcher does not have a duty to hypothesize possible misspellings.") *But see Matter of Glasco, Inc.,* 642 F.2d 793 (5th Cir.1981) (holding that a filing that used the name of a corporate subsidiary provided sufficient notice to subsequent creditors, even though the name was different from the legal corporate name).

This Court is hampered by the scarcity of direct Oklahoma or Tenth Circuit case law on this issue. In one analogous case, *Pearson v. Salina Coffee House,* 831 F.2d 1531 (10th Cir.1987), the Tenth Circuit found that, under Kansas' codification of the UCC, a creditor's filing under a debtor's well-known trade name was seriously misleading because it bore no similarity to the debtor's legal name. *Id.* at 1536. The court was unpersuaded by the argument that the trade name was so commonly recognized that it would provide notice, cautioning that "[c]larity and certainty in lien perfection requirements are lost if equitable exceptions are created which permit trade name filings to replace filings in the legal name when the 'equities' so dictate." *Id.* The court found persuasive the Comment to Kansas' codification of the UCC which explicitly rejected the use of dissimilar trade names. *Id.* at 1535. However, in discussing the Comment and Kansas case law, the Tenth Circuit implicitly acknowledged that under circumstances "when a trade name is similar to the corporate name it may not be seriously misleading." *Id. See also Records and Tapes, Inc. v. Argus, Inc.,* 8 Kan.App.2d 255, 655 P.2d 133 (1982) (holding that filing under "Argus Tapes and Records," instead of the legal name of "Argus, Inc.," was not seriously misleading).

Only two cases specifically address the boundaries of what is permissible in using erroneous or trade names under Oklahoma's statute. In *Matter of Fowler,* 407 F.Supp. 799 (W.D.Okla.1975), the court addressed similarities between an individual debtor's legal name and the trade name used on a filed financing statement. The court stated that "the general rule can be formulated that a financing statement, in order to perfect a security interest, must, in the case of an individual, or individuals, doing business under a trade name, show the name of the individual legally responsible for the debt unless the trade name and the individual debtor's name are *so similar* that a prospective creditor, upon seeing the trade name in the records, would be alerted that there might be a prior security interest in the involved collateral." *Id.* at 803 (emphasis added). In *Fowler,* the financing agreement contained the name of the individual and the trade name, but was misfiled by a clerk and, thus, the error was not the creditor's fault. Nevertheless, the use of the debtor's trade name was found not to be seriously misleading.

In *Peoples National Bank v. Uhlenhake,* 712 P.2d 75 (Okla.Ct.App.1985), the Oklahoma Court of Appeals held that the

filing of a financing statement under a debtor's substantially different and erroneous trade name was not seriously misleading under § 9–402(8) because a subsequent creditor had notice of the name through prior dealings and papers of the debtor. The court noted that "[p]erfect accuracy ... is not required as long as the financing statement contains sufficient information 'necessary to put any searcher on inquiry.'" *Id.* at 77. The court stated that "the critical inquiry in assessing whether [a] security interest is perfected is whether a 'reasonably prudent subsequent creditor would have discovered the prior security interest.'" *Id.* at 78. Such decisions, the court believed, "turn on the particular factual circumstances involved." *Id.*

■■■ From these disparate holdings can be gleaned a theme: the UCC and Oklahoma statute strongly favor the simplicity and clarity of using a debtor's legal name on a financing agreement to be filed with a county clerk's office; however, in certain circumstances, the use of a debtor's trade name is sufficient if a subsequent creditor could reasonably find the listing, either because the particular indexing system provides an inquirer with flexibility or the trade name is very close to the legal name of the debtor. Ultimately, the purpose of a UCC filing system is to protect the interests of secured creditors and to provide notice to all subsequent creditors that a prior lien interest exists in a given debtor's property. While "[t]he rigid requirement that a debtor's legal name be used on the financing statement further the objectives of the UCC filing system for secured transactions," *Pearson*, 831 F.2d at 1536, such a requirement would be unrealistically rigid and formal if taken out of context, since "[t]he emphasis of the [UCC] is thus 'directed toward commercial realities not corporate technicalities.'" *Uhlen-*

*hake*, 712 P.2d at 77–78 (citations omitted). Whether or not the use of an erroneous or trade name in a filing is "seriously misleading" under § 9–402(8) must be viewed in light of the very system to be used by prospective creditors in discovering the filing's existence.

■■■ The facts of this case lead the Court to conclude that Star's failure to use Thriftway's true legal name was not seriously misleading. First, the differences between the two names is slight. Moreover, as Star demonstrated in its original motion for summary judgment, the trade name could be found by using only a slightly broader search than the one used by Citizens. Such a search did not require Citizens to "search under any and all trade names before assuring themselves that they have discovered prior interests." *Pearson*, 831 F.2d at 1536. Rather, Star's filing was easily retrievable with a minimally expanded search based upon Thriftway's own legal name. Given the commercial reality that financing agreements may be misfiled or misnamed, despite all best efforts, a searcher should be required to at least take advantage of the flexibility offered by a computer system to find all potential filings with similar names.[1] *See Fowler,* 407 F.Supp. at 803.

■■■ Citizens conducted the most narrow search possible by searching only under Thriftway's legal name. As the bankruptcy court noted, "It is fatuous, especially in the commercial context, for one to argue that searching for one narrow entry in an electronic database is a reasonable search." *In re Thriftway Auto Supply, Inc.*, 156 B.R. 300, 302 (Bankr.W.D.Okla. 1993). Oklahoma case law supports the view that a "reasonably prudent creditor" must conduct a diligent search. *See Uhlenhake,* 712 P.2d at 78.[2] To not take

---

1. Moreover, there is evidence from Citizens' own files that it was aware of Thriftway's trade name at the time they searched the Oklahoma County filing records. Such an awareness will not necessarily estop Citizens from challenging Star's filing, as Star urges us to do under *Uhlenhake,* because we have no evidence that Citizens actually relied on this information. However, it is at least indicative of the care Citizens used in

searching the filing records that it had access to this alternate name and failed to make any attempt to search for variations on Thriftway's legal name.

2. However, there are no cases which actually define the precise standards for what would be a "diligent" search. In the absence of any clear pronouncements by the Oklahoma courts, the

advantage of the flexibility offered by an electronic indexing system is not diligent given commercial realities. Citizens cannot hide behind formalistic requirements in order to justify actions which were not "reasonably prudent" under common commercial circumstances. *See Thriftway,* 156 B.R. at 302 ("When Citizens limited its search to the formal corporate name it unreasonably hindered itself with electronic blinders.").

■ Simply put, Star's filing was not seriously misleading and Citizens' search was not reasonably diligent because it would not have required a prognosticator or a magician to find it in the Oklahoma County electronic indexing system. It was well within contemplation that a potential prior security interest might be on file, especially when it would have taken only minimal creativity to find it. The very thrust of the UCC requirements and Oklahoma's codification of them is to bring certainty to the recording of security interests. These requirements are geared towards use in the practical realities of the commercial world. It would be foolish to follow strict formal requirements and void Star's priority security interest, as Citizens would have us do, when the statute itself provides for some leeway for filing errors based upon commercial realities.[3]

## CONCLUSION

The Court holds that Star's lien interest in Thriftway is perfected and that Star is entitled to priority as first secured creditor. Citizens' lien interest is therefore entitled to second priority.

AFFIRMED.

It is so ordered.

Court is forced to draw upon common sense. A diligent search would not require that a potential creditor search endlessly and fruitless for any possible prior liens; however, diligence certainly requires using all means and knowledge reasonably at hand, based upon the flexibility and sophistication of a specific indexing system and any information which could reasonably be known to the inquirer at the time of the search.

**3.** The bankruptcy court also noted that Star did not have counsel in connection with the preparation of the security agreement, thereby excusing the omission of required legal nomenclature because Star made a good faith effort to comply with the formal requirements of § 9–402. *See Thriftway,* 156 B.R. at 302, n. 2. While such an inquiry may be helpful with respect to Star's intent to mislead future creditors, it is not relevant to the question of whether Star's filing was actually "seriously misleading." Moreover, as Citizens correctly notes in its brief, the text of § 9–402 does not support a "good faith" standard with respect to filing financial agreements. At the time of filing, it was Star's duty to obtain the necessary correct information for the filing, with or without assistance of counsel. *See also Pearson,* 831 F.2d at 1536 ("It is not a serious burden to require the creditor to ascertain the legal name of the debtor at the time it files a financing statement.") Nevertheless, there is evidence that the only name with which Thriftway provided Star was the name "Thriftway Auto Stores." In such a case, where the debtor might have misled the creditor as to its correct legal name, there is a stronger case for finding the creditor's error to be excusable. *See id.* ("If a creditor inquires of a debtor as to its legal name and is intentionally misled, a different result might be appropriate.").