**WOODS, A DIVISION OF HESSTON CORPORATION**

v.

**BATH INDUSTRIAL SALES, INC. and H & G Corporation.**

Supreme Judicial Court of Maine.

Argued Sept. 13, 1988.

Decided Oct. 28, 1988.

---

**1130**

David R. Weiss, Elizabeth J. Scheffee (orally), Stinson, Lupton & Weiss, P.A., Bath, for plaintiff.

Ervin D. Snyder (orally), Snyder & Jumper, Wiscasset, for H & G Corp.

Patrick J. Scully (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for Bath Indust. Sales.

Before WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

WATHEN, Justice.

H & G Corporation (H & G) appeals from a judgment of the Superior Court (Sagadahoc County, Lidez, J.) finding that H & G acted in bad faith when it filed a financing statement listing the debtor's name as Steiner Enterprises, Inc., at a point in time when it knew that the corporate debtor intended to immediately change its name to Bath Industrial Sales (BIS). The Superior Court subordinated H & G's security interest in after acquired inventory to a subsequent purchase money security interest in inventory granted by BIS to Woods, a Division of Hesston Corporation (Woods), even though Woods gave no notification to H & G pursuant to 11 M.R.S.A. § 9–312(3) (Supp.1987). On appeal H & G argues that the court erred in applying the good faith requirement of the Uniform Commercial Code. We affirm the judgment.

## I.

The record before the Superior Court can be summarized as follows: Steiner Enterprises, Inc., entered into an agreement to purchase from H & G the fixed assets, inventory and name of Rent–All of Bath, Inc., d/b/a Bath Industrial Sales. The agreement was executed on August 29, 1984 by Stephen Hammond, as president of H & G, formerly known as Rent–All of Bath, Inc., and Joseph Steiner as president of Steiner Enterprises, Inc. Joseph Steiner formed Steiner Enterprises, Inc. in order to accomplish the sale, intending to change the name to Bath Industrial Sales as soon as possible after the closing. The agreement obligated H & G to take all necessary steps at the closing "to transfer the name Rent–All of Bath, Inc. and Bath Industrial Sales by the filing of the appropriate documents with the Office of the Secretary of State." H & G provided seller financing to Steiner Enterprises, Inc., as part of the sale, taking a security interest in certain assets of Steiner Enterprises, Inc., including after acquired inventory.

After the closing, H & G filed its financing statement with the Secretary of State on August 31, 1984, showing "Steiner Enterprises, Inc.", as the debtor and "H & G Corp. formerly Rent–All of Bath, Inc.", as the secured party. The financing statement did not in any way indicate the contemplated name change of the debtor to Bath Industrial Sales. Documents relating to the name change of Steiner Enterprises, Inc., were simultaneously delivered to the Office of the Secretary of State, but for reasons unclear from the record the name change was not completed until October 16, 1984.

Stephen Hammond and his partner John Grill introduced Joseph Steiner to a number of vendors and suppliers who had done business with BIS in the past. Grill arranged a meeting on October 2, 1984 between Steiner and Nelson Carter, a representative of plaintiff Woods. Hammond was present during that meeting. Through Carter, Woods agreed to supply and finance inventory and Joseph Steiner executed a security agreement and financing statement listing the debtor corporation as Bath Industrial Sales. Although the security agreement contained a handwritten no-

tation indicating that Maine National Bank and H & G held security interests in collateral of BIS, this language was crossed out at some point. Because the notation was crossed out, Carter assumed it had no bearing on the security agreement and made no attempt to read it. Joseph Steiner did not provide Carter with any information concerning the status of the corporate name and Carter made no inquiry. On October 4, prior to advancing inventory, Carter searched the UCC records at the Office of the Secretary of State under the name of BIS. That search revealed only one filing against BIS by another vendor, it did not reveal H & G's interest in after acquired inventory by virtue of the filing against Steiner Enterprises, Inc.

BIS performed poorly and, on Steiner's suggestion, H & G reacquired the assets of the business in December, 1985. Carter, aware that H & G was to reacquire BIS, went to BIS on January 7, 1986 to make arrangements to repossess Woods' inventory. Hammond met Carter at BIS and told him not to remove the inventory because H & G held a superior security interest. After a bench trial, the Superior Court subordinated H & G's security interest to the security interest of Woods [1] and authorized Woods to sell the collateral. In addition the court granted judgment for Woods against defendants BIS and H & G in the amount of $14,401.61, less any amount realized from the sale of the inventory.[2]

## II.

■ H & G argues on appeal that the trial court erred in finding that the obligation of good faith imposed under Maine's Uniform Commercial Code, 11 M.R.S.A. § 1–203 (1964), required H & G to provide notice of the pending name change to third persons. In reaching its decision the Superior Court relied on *In Re Kalamazoo Steel Process, Inc.*, 503 F.2d 1218 (6th Cir. 1974), a case similar to the case at bar. In that case, Kalamazoo sold equipment to

Roman Industrial Corp., but retained a security interest in the equipment. The security agreement reflected the anticipated name change of Roman to Kalamazoo. Kalamazoo, however, filed the financing statement listing the debtor as Roman, without indicating the imminent name change. The debtor then changed its name to Kalamazoo Steel Process, Inc. The creditor subsequently instituted foreclosure proceedings against Kalamazoo, and Kalamazoo filed a voluntary petition for bankruptcy. In ruling on the trustee's challenge to the security, the court held that "when a secured party has knowledge at the time the security agreement is executed that the debtor intends to change its name, and the new name is known to him, the secured party must act in good faith to insure the filing under the Code not only discloses the current and correct name of the debtor but also reflects the pending name change of which the parties were aware." *Id.* at 1222.

The Court in *Kalamazoo* applied the good faith provision of the Uniform Commercial Code, requiring "honesty in fact." 11 M.R.S.A. § 1–201(19) (1964). Quoting the decision of the referee in bankruptcy, the court stated: "A secured party cannot claim that it is being completely honest when it files a financing statement knowing that it will be indexed under a name that will be in use only so long as it takes two corporations to take the legal steps required to change their names. This makes a farce out of notice filing." *Id.*

Initially, H & G attempts to distinguish *Kalamazoo* on the basis that the plaintiff was a trustee in bankruptcy, rather than a subsequent creditor. We find no significance in the distinction between an actual lien creditor and the hypothetical lien creditor represented by the trustee. Next, H & G calls our attention to the fact that the Maine Code contains a provision not present in *Kalamazoo*. In 1977 the Maine Legislature amended the UCC to affirma-

---

1. Because Woods was unaware of the prior security interest it failed to obtain priority by notification to H & G pursuant to 11 M.R.S.A. § 9–312(3).

2. H & G does not challenge the entry of a money judgment in addition to the loss of collateral.

tively state that "[a] secured party is not required to file a new financing statement to perfect a security interest after such change of name, identity or corporate structure of the debtor." 11 M.R.S.A. § 9–402(2)(d) (Supp.1987).[3] The Superior Court correctly concluded that although section 9–402(2)(d) precludes any argument that H & G had a duty to file a new financing statement when the change of name was subsequently accomplished, the statute does not negate the requirement of good faith with regard to the initial filing. Section 9–402(2)(d) is simply not relevant to the ruling in this case.

We find the reasoning in *Kalamazoo* persuasive, particularly, where as here, the secured party has transferred the name to the debtor with full knowledge of its intended use. Moreover, the record adequately supports the trial court's finding that H & G did not act in good faith.

■■■■ Finally, H & G argues that "the trial court focused exclusively on the good faith obligation of H & G in this case without giving any corresponding consideration to the duties of the other two parties." The trial court expressly concluded "there is no basis for any finding of bad faith on behalf of BIS." Good faith is a question of fact and the trial court's determination will not be reversed unless clearly erroneous. Here, the court found that

> "Steiner did not understand the importance of disclosing to Carter that Steiner Enterprises was the predecessor corporation to BIS .... Steiner would have nothing to gain from trying to conceal that fact from Carter and Woods. Given the provisions of 11 M.R.S.A. § 9–312(3) the existence of the security interest would not have been an impediment to Woods providing inventory to BIS with

the assistance of purchase money financing."

The trial court made no express findings as to the good faith of Woods. In the absence of a request for findings pursuant to M.R. Civ.P. 52, we proceed on the assumption that the court found for the prevailing party on all factual issues necessarily involved in the decision. *Blue Rock Industries v. Raymond International, Inc.,* 325 A.2d 66, 73 (Me.1974). We assume that the trial court found that Woods acted in good faith. The express findings concerning BIS and the assumed findings concerning Woods are not clearly erroneous.

The trial court found that defendant BIS had nothing to gain by trying to conceal H & G's interest in the inventory, and similarly Woods had nothing to gain by remaining purposefully ignorant of that interest. Carter testified that if he had known of H & G's prior security interest in the after acquired inventory he would have given notice of Woods' purchase money security interest as he did to other secured creditors. Finding no error in the decision of the Superior Court we affirm.

The entry is:

JUDGMENT AFFIRMED.

All concurring.

---

**3.** Maine has not adopted the following provision added to the official version of the Code by a 1972 amendment:

A financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor, whether or not it adds other trade names or names of partners. Where the debtor so changes his name or in the case of an organization its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time. A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer. U.C.C. § 9–402(7), 3A U.L.A. 48 (1981).