OPINION OF THE COURT
 

 Bellacosa, J.
 

 Neither Uniform Commercial Code § 9-402 (7) nor Uniform Commercial Code § 1-203, under the circumstances of this case, requires a secured party to
 
 refile
 
 a properly and accurately filed financing statement, upon the subsequent event of a name change by the debtor. Nor does either section require a special notation of an impending name change by the debtor on the initially filed financing statement, even if known by the filing creditor.
 

 Cambria Fuel Oil Co. (Old Cambria), on November 1, 1988, sold its business to 306 Fuel Oil Corp., retaining a security interest in the transferred assets. Old Cambria filed its only
 
 *522
 
 UCC-1 financing statement on November 18, 1988, and 306 Fuel changed its name on December 29, 1988 to Cambria Petroleum Corp., referred to here as "New” Cambria.
 

 The contract of sale identified the buyer as "306 Fuel Oil Corp.” Old Cambria gave 306 Fuel the right to use the name "Cambria Fuel Oil Co., Inc.” and "Cambria” as trade names, while agreeing
 
 not
 
 to use either of the names in the future. The same day they entered into the contract of sale, 306 Fuel and Old Cambria also entered into an escrow agreement, which included a security interest subordination clause. Pursuant to that clause, Old Cambria agreed to subordinate its security interest to the new lender should 306 Fuel acquire additional financing from another lender. The clause, paragraph 5 of the escrow agreement, also provided that if 306 Fuel obtained new financing, it would have to deliver a statement on its letterhead informing Old Cambria of the arrangement, together with a new, subordinate UCC-1 financing statement. At that point, 306 Fuel could file a simultaneously executed UCC-3 termination statement relating to Old Cambria. This UCC-3 was to be held in escrow by 306 Fuel’s attorneys.
 

 On November 18, 1988, before 306 Fuel changed its name, Old Cambria filed its UCC-1 financing statement with the Secretary of State, listing the debtor as "306 Fuel Co.”
 

 After the sale in November but before 306 Fuel’s name change in December, Fleet Factors Corp., represented in the transaction at issue by its Ambassador Factors Division, extended credit to New Cambria. This financing was purportedly secured by the same assets in which Old Cambria still held a filed security interest for the payment of promissory notes.
 

 Ambassador, a commercial lender, now seeks to foreclose its subsequently perfected security interest in certain liquidated assets of New Cambria and the defendant Bandolene companies. Intervenor-claimant Old Cambria, a former fuel oil company, acquired its security interest in New Cambria’s assets when it sold its business to the company now known as New Cambria. The buyer, New Cambria’s predecessor in name 306 Fuel, gave Old Cambria as seller $700,000 in promissory notes.
 

 Ambassador and 306 Fuel made their financing arrangement on December 16, 1988. Secured seller Old Cambria was never notified of this new loan transaction, was never provided with a subordinate UCC-1, nor was the escrowed UCC-3 ever released. Nearly two weeks
 
 later,
 
 on December 29, 1988, 306 Fuel changed its name to "Cambria Petroleum Corp.”
 

 
 *523
 
 On January 5 and 6, 1989, Ambassador filed its own UCC-1 financing statement after making its loan to New Cambria. Ambassador thus perfected its security interest in the Old Cambria assets and identified New Cambria as the debtor. The Ambassador loan to New Cambria/306 Fuel was for approximately $633,000. New Cambria subsequently defaulted.
 

 Ambassador started this lawsuit targeting especially the doubly secured Old Cambria collateral. Supreme Court appointed a temporary receiver, who sold New Cambria’s assets for $686,000. Old Cambria claims $697,189 and Ambassador $543,858 out of the liquidated assets. The principal issue is whether Old Cambria’s prior perfected security interest prevails.
 

 Supreme Court held a hearing to determine the competing claims of priority. It awarded the entire net proceeds to Old Cambria, with interest, concluding that Old Cambria had priority over Ambassador by virtue of its valid, senior perfected security interest, and had no duty to file a new financing statement upon the debtor’s name change. The court noted that Old Cambria’s filing with the Secretary of State fully complied with Uniform Commercial Code requirements because, at the time of the sale between Old Cambria and 306 Fuel, the latter was doing business under that name in Nassau and Kings Counties. Finally, the court held that the subordination agreement did not become operative because 306 Fuel/New Cambria had breached the agreement by failing to give notice to Old Cambria and to file the escrowed UCC-3 termination statement.
 

 The Appellate Division affirmed for the reasons stated in the lower court’s detailed opinion, containing findings of fact and conclusions of law (207 AD2d 523). We granted leave to appeal and now affirm the order of the Appellate Division.
 

 Initially, we note that no one disputes that Old Cambria filed the earlier security interest. The secured party who first files a financing statement is deemed to have the senior security interest (UCC 9-312 [5] [a];
 
 see, e.g., Matter of Chase Manhattan Bank v State of New York,
 
 40 NY2d 590, 594).
 

 Ambassador argues, however, that Old Cambria knew of 306 Fuel’s intended name change at the time of its initial filing. That, it claims, triggers an affirmative duty to file an amended financing statement, or at the very least to have noted the potential change of name on the initial filing. Ambassador argues that because Old Cambria took neither of those addi
 
 *524
 
 tional steps, Old Cambria’s security interest was not valid or was nullified.
 

 Old Cambria first counters that there was no finding of fact that Old Cambria knew of the intended name change. In any event, says Old Cambria, Ambassador itself had a duty to ascertain the true name of the party to whom it was making its loan and the status and lineage of the proffered collateral.
 

 Until 1978, the Uniform Commercial Code was silent as to the effect of a name change by a debtor on a secured party’s filing obligations
 
 (see, Matter of Pasco Sales Co.,
 
 77 Misc 2d 724, 726 [1974]). In 1978, UCC 9-402 (7), as part of the 1972 revision of the Uniform Commercial Code, went into effect (L 1977, ch 866, § 26 [eff July 2, 1978]; 9 Hawkland, Uniform Commercial Code Series § 9-402:07, at 534). That section provides that a secured party must refile a financing statement upon the debtor’s name change only when the name change is seriously misleading
 
 and the collateral at issue was obtained more than four months after the name change:
 

 "Where the debtor so changes * * * its name, identity or corporate structure that a filed financing statement becomes seriously misleading, the filing is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the change, unless a new appropriate financing statement is filed before the expiration of that time” (UCC 9-402 [7]).
 

 The section by its terms applies only to collateral obtained by the debtor
 
 after
 
 the expiration of the four month period. That is not the situation here and, thus, the statute imposes no refiling requirement.
 

 The Official Comment to section 9-402 (7) declares that a "seriously misleading” name change does not alone trigger a secured party’s duty to refile (Official Comment, reprinted in McKinney’s Cons Laws of NY, Book 62½, UCC 9-402 [7], at 503). Also significantly, "[t]he old financing statement, if legally still valid under the circumstances, would continue to protect collateral acquired before the change” (Official Comment, reprinted in McKinney’s Cons Laws of NY, Book 6
 
 2½,
 
 UCC 9-402 [7], at 503;
 
 see, Woods u Bath Indus. Sales,
 
 549 A2d 1129 [Me];
 
 In re Falk Interiors,
 
 61 Bankr 720, 722 [Bankr WD Wis]; 9 Hawkland, Uniform Commercial Code Series § 9-402:07, at 535).
 

 Here, 306 Fuel changed its name to Cambria Petroleum
 
 *525
 
 Corp. (New Cambria) about a month and a half after acquiring the Old Cambria assets. Because the only collateral at issue in this litigation, however, is that acquired prior to the name change, Old Cambria incurred no obligation to refile anything under section 9-402 (7) to continue to protect its security interest
 
 (Woods v Bath Indus. Sales,
 
 549 A2d 1129, 1132,
 
 supra; In re Falk Interiors,
 
 61 Bankr 720, 722 [Bankr WD Wis],
 
 supra).
 
 Here, we need not reach the issue of whether the name change was "seriously misleading” because that clause applies only to collateral acquired
 
 after
 
 the four-month period following the name change, a circumstance and event not present in this case (UCC 9-402 [7];
 
 see, In re Rentclub,
 
 149 Bankr 699,
 
 dismissed by stipulation
 
 163 Bankr 604 [Bankr MD Fla]).
 

 Moreover, section 9-402 (7) does not require an amended filing dependent on the secured party’s awareness of a name change (McLaughlin,
 
 "Seek But You May Not Find": Non-UCC Recorded, Unrecorded and Hidden Security Interests Under Article 9 of the Uniform Commercial Code,
 
 53 Fordham L Rev 953, 973 ["regardless of (the secured party’s) knowledge of the name change, (its) security interest in the specified equipment takes priority over (a new creditor’s) subsequent security interest”]). On the contrary, rather than obligate the secured party to refile, the drafters of the Uniform Commercial Code provided instead "to place the burden on the party searching the files to know the true name of the entity that possesses the property”
 
 (In re Falk Interiors, supra,
 
 at 722).
 

 The Uniform Commercial Code balances the duty on a prospective secured creditor in the few cases where the situation would arise against the less desirable result of requiring "anything of secured parties that might increase the cost of secured credit” (Knippenberg,
 
 Debtor Name Changes and Collateral Transfers Under 9-402 (7): Drafting From the Outside-In,
 
 52 Mo L Rev 57, 92). The end result of that balancing is to require refiling only as to after-acquired collateral, regardless of a previously secured party’s knowledge
 
 (compare, Beneficial Fin. Co. v Kurland Cadillac-Oldsmobile,
 
 32 AD2d 643, 645;
 
 In re Sparmal Enters.,
 
 68 Bankr 901, 903 [Bankr SD Ind]).
 

 Appellant Ambassador further proposes to permeate or overlay the duty of good faith in UCC 1-203 into an article 9 particularized duty to refile in the circumstances of this case. Its fallback claim is that good faith triggers a duty at least to note an impending name change on the initial financing
 
 *526
 
 statement in a way that would make subsequent prospective creditors likely to find it.
 

 Section 1-203 provides that "Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement” (UCC 1-203). Ambassador relies heavily on
 
 In re Kalamazoo Steel Process
 
 (503 F2d 1218 [6th Cir 1974]), which elevated good faith to transcendent importance by holding that a secured party with knowledge of an impending name change must either refile or note the impending change on its initial filing
 
 (id.,
 
 at 1222;
 
 see also, Wollenberg v Phoenix Leasing, 182
 
 Ariz 4, 893 P2d 4, 10 [Ct of App];
 
 Woods v Bath Indus. Sales,
 
 549 A2d 1129,
 
 supra; In re Darling Lbr., 56
 
 Bankr 669 [Bankr ED Mich]).
 

 Kalamazoo Steel,
 
 first of all, predated the enactment of section 9-402 (7)
 
 (see,
 
 Mich Stat Annot § 19.9402 [7]). After the Sixth Circuit decided
 
 Kalamazoo Steel
 
 and before the enactment of the new subsection, the Michigan Supreme Court, however, considered the secured party’s duties upon the debt- or’s subsequent change of name in
 
 Continental Oil Co. v Citizens Trust & Sav. Bank
 
 (397 Mich 203, 244 NW2d 243 [1976]). It substantially disavowed
 
 Kalamazoo Steel’s
 
 reasoning, holding that where a name change occurs after the initial filing of a financing statement, the law imposes no duty to refile. Significantly, the court in
 
 Continental
 
 noted that section 9-402 (7) had at that time been proposed but not enacted. The proposed change was cited as authority, nevertheless, that then-existing commercial practice was not to require refiling or amendment or anticipatory notation. In light of the Uniform Commercial Code’s preference for retaining commercial custom
 
 (see,
 
 UCC 1-102 [2] [b]), the court refused to impose a requirement not found in law
 
 (Continental Oil Co. v Citizens Trust & Sav. Bank,
 
 397 Mich 203, 244 NW2d 243, 245,
 
 supra).
 

 On another tack, Ambassador argues that
 
 Kalamazoo Steel
 
 also held that the filing there at issue was misleading
 
 ab initia,
 
 in that the secured party
 
 knew
 
 that a name change was imminent. Following this view, the Supreme Judicial Court of Maine in
 
 Woods v Bath Indus. Sales
 
 (549 A2d 1129, 1132,
 
 supra),
 
 while recognizing that amended filing was not required under section 9-402 (7), nevertheless held that "the statute does not negate the requirement of good faith with regard to the
 
 initial filing”
 
 (emphasis added)
 
 (compare,
 
 UCC 9-402 [8];
 
 First Manufactured Hous. Credit Corp. v Clarkson Mobile Home Park,
 
 148 AD2d 901, 902,
 
 Iv denied
 
 74 NY2d 611;
 
 *527
 

 TMMB Funding Corp. v Associated Food
 
 Stores, 136 AD2d 540, 542;
 
 see generally,
 
 Note,
 
 The Effect of Errors and Changes in the Debtor’s Name on Article Nine Security Interests,
 
 1975 Duke LJ 148).
 

 We reject the general approach of
 
 Kalamazoo Steel,
 
 the tilt of those authorities that have followed its cue, and note further that there is no finding of knowledge on Old Cambria’s part in this case. To impose a generalized duty, not fairly precisely fixed in a particular section of the Uniform Commercial Code, would upset the preference for definiteness, regularity and predictability in commercial dealings underlying the Uniform Commercial Code and our precedents
 
 (see,
 
 UCC 1-102 [2] [a];
 
 SOS Oil Corp. v Norstar Bank,
 
 76 NY2d 561, 571;
 
 Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.,
 
 74 NY2d 340, 349; Note,
 
 Hotu Appellate Opinions Should Justify Decisions Made Under the U.C.C.,
 
 29 Stan L Rev 1245, 1247).
 

 Under Uniform Commercial Code § 9-402 (1):
 

 "A financing statement is sufficient if it gives the names of the debtor and the secured party * * * from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.”
 

 The first part of section 9-402 (7) cogently states that "[a] financing statement sufficiently shows the name of the debtor if it gives the individual, partnership or corporate name of the debtor.” Plainly, therefore, no requirement exists in article 9 or by incorporation of some general good-faith component that the debtor name recorded on an otherwise complete and properly filed financing statement be anything other than the debtor’s then-operative name
 
 (see, In re Falk Interiors,
 
 61 Bankr 720, 722,
 
 supra).
 
 It would be irregular and unauthorized to conclude that a party who complied with sections 9-402 (1) and 9-402 (7) is otherwise ousted and deprived of its senior secured position with respect to the collateral at issue under circumstances as developed in this case.
 

 We need not reach the issue of whether a secured party who files a financing statement with knowledge of a definite impending name change and an intent to deceive or defraud may ever be deemed to be acting in bad faith sufficient to interpose UCC 1-203 and other remedial theories. Rather, it is sufficient to note that in this case, there was no finding of knowledge,
 
 *528
 
 bad faith or wrongful intent attributable to Old Cambria. Indeed, the mere possibility of and contractual authorization for a name change are all that exist in this case as fact findings. That the change did come about, six weeks later and with other key intervening developments and transactions, does not vitiate the valid senior filing by Old Cambria.
 

 Ambassador’s charges of bad faith against Old Cambria also ring hollow in light of the trial court finding inherently incredible Ambassador’s claim of its own ignorance about the impending name change by a party with whom it was negotiating. The Uniform Commercial Code imposes a heavy duty on prospective secured creditors to know the then-pertinent, proper corporate name of its prospective debtor. At the time that Ambassador negotiated its financing agreement, it did so with 306 Fuel, not New Cambria. In light of Ambassador’s own duty of good faith under section 1-203, it cannot be heard now to complain that someone else should have told it the true and then-present legal name of the party to whom it was extending credit.
 

 We have considered all arguments, including that relating to the subordination agreement, and conclude that they are without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.