**In re James KINCAID, aka James Gordon, and Suzanne Kincaid, aka Suzanne Gordon, Debtors.**

**Brian L. BUDSBERG, Chapter 11 Trustee for the bankruptcy estate of James Kincaid, aka James Gordon and Suzanne Kincaid, aka Suzanne Gordon, Plaintiffs,**

**v.**

**PREMIER CREDIT CO./Dealer Finance II; Automotive Finance Co.; Donald Medley; Maria Diamond; Barry Coleman; Reliable Creditor Association, Inc.; Washington State Department of Licensing; et al., Defendants.**

Bankruptcy No. 97–37007.
Adversary No. A97–38800.

United States Bankruptcy Court,
W.D. Washington.

March 25, 1998.

Steven Levy, Fife, WA, for defendants.

Brian Budsberg, Olympia, WA, for Ch. 7 Trustee.

Christine Ford, Tacoma, WA, for Simpson Credit Union and American General Finance.

Andrew Gala, Seattle, WA, for Premier Credit Co./Dealer Finance II.

Bradley Jones, Seattle, WA, for Arcadia Financial Ltd.

Deborah Crabbe, Seattle, WA, for Automotive Finance Corp.

James MaGee, Tacoma, WA, for, debtors.

Laurin Schweet, Mercer Island, WA, for Harborstone Credit Union Key Bank of Washington U.S. Bank.

Gordon Hauschild, Tacoma, WA, for Reliable Credit Ass'n.

## MEMORANDUM DECISION ON SUMMARY JUDGMENT AS TO PRIORITY OF SECURITY INTEREST IN MOTOR VEHICLES BETWEEN FLOORING AND CONSUMER LENDERS

PAUL B. SNYDER, Bankruptcy Judge.

Defendants/creditors, Premier Credit Co./Dealer Finance II, Inc. (DF) and Automotive Finance Corporation (AFC) seek to foreclose their security interests in certain motor vehicles in Prestige Auto Sales Superstore's (Prestige) inventory. Prestige is a sole proprietorship owned by James Kincaid and Suzanne Kincaid (Debtors) DF and AFC contend their liens on the Debtors' business inventory have priority over the liens of Arcadia Financial, Ltd., American General Finance, Inc., Harborstone Credit Union, Key Bank of Washington, Simpson Credit Union and U.S. Bank (Consumer Lenders), who claim a security interest in motor vehicles that entered the Debtors' inventory generally by way of trade-in or consignment. This matter is before the court on the parties' summary judgment motions.

### FACTS

Consumer Lenders loaned money to their customers and secured the loans by taking security interests in their customers' motor vehicles. The Consumer Lenders perfected their security interests by noting these interests on the certificates of title, as authorized by RCW 46.12.095.[1] At a later date, the Consumer Lenders' customers traded in or consigned their motor vehicles to Prestige, whose owners subsequently filed bankruptcy. The record does not indicate that any of the

---

1. RCW 46.12.095 provides, in pertinent part:
   **Requirements for perfecting security interest**
   A security interest in a vehicle other than one held as inventory by a manufacturer or a dealer and for which a certificate of ownership is required is perfected only by compliance with the requirements of this section:

   (1) A security interest is perfected only by the department's receipt of: (a) The existing certificate, if any, and (b) an application for a certificate of ownership containing the name and address of the secured party and (c) tender of the required fee.

Consumer Lenders knew about their customers' transactions with Prestige. It is undisputed that none of the Consumer Lenders filed financing statements, which is a means of protecting a security interest in a motor vehicle that becomes inventory.

The instant dispute arises from the Debtors' grant of a security interest in inventory to DF and AFC. DF and AFC advanced money to the Debtors in exchange for a security interest in all motor vehicles in the Debtors' inventory. DF filed a UCC–1 financing statement on April 12, 1994. AFC filed its financing statement on June 17, 1997.

DF and AFC (collectively Flooring Lenders) moved for summary judgment arguing that the Consumer Lenders' interests became unperfected when they failed to file financing statements on their customers' consigned or traded motor vehicles. The Flooring Lenders contend that RCW 62A.9–302(3)(b) requires secured parties to file financing statements to maintain perfection of motor vehicle security interests, even if the secured parties had previously perfected their interests under RCW 46.12.095 by noting their security interests on the certificates of title.

## ISSUE

Does a security interest survive the transfer of a motor vehicle to a motor vehicle dealer's inventory where the secured party notes its interest on the certificate of title but does not file a financing statement?

## LAW

The Revised Code of Washington, Section 62A.9–302 sets forth the rules for perfecting security interests. Perfection is normally achieved by filing a financing statement. *See* RCW 62A.9–302. But security interests in motor vehicles are not, as a general rule, perfected by filing a financing statement. RCW 62A.9–302(3)(b). Rather, a security interest in a motor vehicle is perfected by the secured party noting its interest on the certificate of title. RCW 62A.9–302(3)(b); RCW

**2.** Moreover, the comments suggest that RCW 62A.9–302(3)(b) does not apply to the Consumer

46.12.095(1). But this rule is also subject to exception. Where the motor vehicle is in a motor vehicle dealer's inventory, perfection is achieved by filing a financing statement. *See* RCW 62A.9–302(3)(b).

This court agrees with the Consumer Lenders that the plain reading of the statute supports their position. RCW 62A.9–302(3)(b) provides, in pertinent part:

(3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to

. . . .

(b) the following statute of this state: RCW 46.12.095 [motor vehicle statute] . . .; **but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this Article (Part 4) apply to a security interest in that collateral created by him as debtor[.]**

(Emphasis added.) Subsection (b) clearly states that "the filing provisions of this Article (Part 4) apply to a security interest . . . **created by him as debtor.**" RCW 62A.9–302(3)(b) (emphasis added). The word "him" refers to the "person who is in the business of selling goods of that kind." RCW 62A.9–302(3)(b). In other words, by its plain terms, subsection (b) applies only to persons who create security interests in their own business inventory.

Such is not the case here. The Consumer Lenders and their customers created the security interests in accordance with RCW 46.12.095; and, the security interests were in consumer goods, not inventory. Since the statute's language is clear, this court must apply it in accordance with its plain meaning. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). Thus, this court finds that RCW 62A.9–302(3)(b) does not require the Consumer Lenders to perfect their security interests a second time by filing financing statements.[2]

Lenders' security interests. Under the section entitled "Official Reasons for 1972 Change" is

Any other reading would lead to the result that consumer lenders would have no method of protecting themselves against flooring lenders with financing statements on file with the Secretary of State. In such instances, the consumer lenders' customers could always defeat the consumer lenders' perfected security interests by trading or consigning the vehicle to a dealer with a flooring financing statement on file.

Not only does the plain language of the statute compel this result, this result comports with the policies underlying Article 9 of the Uniform Commercial Code.[3] The aim of Article 9 is to facilitate secured transactions by reducing the risks and costs of extending credit. Uniform Commercial Code Comment, RCW 62A.9–101. The costs of extending credit are, in turn, reduced by bringing all consensual security interests in personal property under a uniform notice filing system.[4] The key to the system is notice filing.[5] Notice filing allows a potential creditor to discover whether the borrower's personalty is already encumbered and to stake a claim to the collateral should it decide to extend credit. *In re Copeland*, 531 F.2d 1195, 1203–04 (3rd Cir.1976); *Norwest Bank St. Paul, N.A. v. Bergquist (In re Rolain)*, 823 F.2d 198, 199 (8th Cir.1987).

In keeping with the objective of reducing the costs of secured transactions, the Uniform Commercial Code (Code) drafters have attempted to allocate burdens to those who can best shoulder them. F. Stephen Knippenberg, *Debtor Name Changes and Collateral Transfers Under 9–402(7): Drafting from the Outside–In*, 52 Mo.L.Rev. 57, 69–95 (1987). Since the secured party has absolute control of filing proper notice and is in the best position to ensure its accuracy, the secured party can best shoulder the pre-filing burdens. Knippenberg, *supra*, 52 Mo.L.Rev. at 68, 85. But, at the filing desk, the secured party's control over the document ends, and its costs of monitoring the collateral increases. Knippenberg, *supra*, 52 Mo.L.Rev. at 69. It is at this juncture that the drafters shift the burdens to the unsecured party. *See Bank of West v. Commercial Credit Fin. Servs.*, 852 F.2d 1162, 1173 (1988) ("the Code has allocated the burden of discovering prior filed financing statements to later lenders"); *see also Fleet Factors Corp. v. Bandolene Indus. Corp.*, 86 N.Y.2d 519, 634 N.Y.S.2d 425, 429, 658 N.E.2d 202, 206 (1995) (the drafters placed the burden on the party searching the files to know the true name of the entity that possesses the property). One drafter has noted that the costs of post-filing monitoring may erode the net savings to the cost of secured transactions. Knippenberg,

the following statement: "Subsection (3) continues to carry the thought that . . . the certificate of title procedure does not control the perfection of inventory or 'floor plan' security interests, but instead normal Code filing rules are applicable." Comment, RCW 62A.9–302(3)(b).

3. *See* Uniform Commercial Code Comment 1, RCW 62A.1–102, that provides, in pertinent part:
The [Code] should be construed in accordance with its underlying purposes and polices. The text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole, and the application of the language should be construed narrowly or broadly, as the case may be, in conformity with the purposes and polices involved.

4. *See* Uniform Commercial Code Comment, RCW 62A.9–101.
The growing complexity of financing transactions forces us to keep piling new statutory provisions on top of our inadequate and already sufficiently complicated nineteenth-century structure of security law. The results of

this continuing development are, and will be, increasing costs to both parties and increasing uncertainty as to their rights and the rights of third parties dealing with them. The aim of this Article is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty.

5. *See* Uniform Commercial Code Comment .2, RCW 62A.9–402.

This section adopts the system of "notice filing" which proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs . . . .

*supra*, 52 Mo.L.Rev. at 85; *Fleet Factors*, 634 N.Y.S.2d at 429, 658 N.E.2d at 206. Thus, once properly perfected, a secured party generally has minimal post-filing burdens.[6]

■ This principle is reflected in RCW 62A.9–306(2). This provision states that "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party."[7] RCW 62A.9–306(2). In other words, as a general rule, a secured party has no duty to monitor the collateral post-filing.

This principle is also reflected in RCW 62A.9–402(7). Subsection (7) of RCW 62A.9–402, that dictates whether a creditor must refile a financing statement after collateral is transferred, provides that a secured party need not refile a financing statement upon transfer of the collateral. "A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." RCW 62A.9–402(7); *see also LMS Holding Co. v. Core–Mark Mid–Continent, Inc.*, 50 F.3d 1520, 1524 (10th Cir.1995) ("A filed financing statement

remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer."). Uniform Commercial Code Comment 8, RCW 62A.9–402, explains that subsection (7) deals with the "much debated" problem of whether a new filing is necessary where the collateral has been transferred from one debtor to another and "now answers the question in the negative." Now, "any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it."[8] Uniform Commercial Code Comment 8, RCW 62A.9–402.

This court sees no reason to allocate the burdens differently under the instant circumstances, where the Consumer Lenders initially perfected their interests by noting their liens on the certificates of title rather than by filing financing statements. The post-filing monitoring burdens are no less where a motor vehicle secures a debt than where some other good secures a debt. Moreover, in this case, as between the Flooring Lend-

---

6. *C.f., Corwin v. RCA Corp. (In Re Kittyhawk Television Corp.)*, 516 F.2d 24, 28 (6th Cir.1975) (no duty to refile a financing statement where corporation reformed and transferred collateral to new entity); *Ryan v. Rolland*, 434 F.2d 353, 357 (10th Cir.1970) (a financing statement that named two individuals as debtors was held to continue under UCC 9–306(2) to be a perfected security interest in the collateral notwithstanding a subsequent transfer of such collateral by the debtors to a corporation organized by them); *LMS Holding Co. v. United States (In re LMS Holding Co.)*, 153 B.R. 581, 584 (Bankr. N.D.Okla.1993) (creditors did not have to file new financing statement in Chapter 11 debtors' names to remain perfected after sale to Chapter 11 debtors); *Taylorville Eisner Agency, Inc.*, 445 F.Supp. 665, 669 (S.D.Ill.1977) (bank was not required to file a new financing statement within four months after individual debtors transferred secured collateral to a corporation); *Fliegel v. Associates Capital Co. of Delaware, Inc.*, 272 Or. 434, 537 P.2d 1144, 1148 (1975) (financing statement executed by an individual as a member of a partnership effective after the assets of the partnership were later transferred to a corporation organized to take over the partnership business); *Inter Mountain Ass'n of Credit Men v. Villager, Inc.*, 527 P.2d 664, 670–71 (1974) (financing statement continued to be perfected and effective against a successor corporation into which the debtor and other corporations were subsequently

merged); *Central Washington Bank v. Mendelson–Zeller, Inc.*, 113 Wash.2d 346, 357, 779 P.2d 697, 702 (1989) (where bank properly perfected its interest in crops its interest continued in accounts and instruments generated from the crop sales without need for further filing).

7. RCW 62A.9–306(2) provides, in pertinent part: "Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor."

8. *See* Uniform Commercial Code Comment 8, RCW 62A.9–402.

Subsection (7) also deals with a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another. This question has been much debated both in pre-Code law and under the Code. This Article now answers the question in the negative. Thus, any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of a former owner if circumstances seem to require it.

ers and the Consumer Lenders, the Flooring Lenders are in a far better position to investigate prior encumbrances on a few dealers than are the Consumer Lenders to monitor subsequent encumbrances of every customer. Thus, the economies of the transaction justify the result.

■ The result is also consistent with another rule that runs throughout the Code.[9] That is, the result is consistent with the rule that a transferee of goods acquires no greater rights than those of his transferor. Barkley Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 3.08[3] n. 288 (rev. ed.1993); *see also,* RCW 62A.2–403(1) (purchaser generally acquires only such title as his transferor had);[10] RCW 62A.9–203 (security interest cannot attach until the debtor has rights in the collateral);[11] RCW 62A.9–307(1) (a buyer in the ordinary course does not take free of the security interest created by someone other than the seller);[12] RCW 62A.9–306(2) (security interest survives an unauthorized transfer).[13]

Courts have used this rule as a guiding principle where the Code appears to be silent or ambiguous on an issue. RCW 62A.1–103 makes general principles of law applicable unless displaced by the particular Code provisions. For example, the Ninth Circuit Court of Appeals resorted to this rule in an attempt to resolve what appeared to be a gap in the priority rules of section 9312 of California's version of the Uniform Commercial Code. *Bank of the West,* 852 F.2d at 1174. In *Bank of the West,* the assets of a wholly-owned subsidiary were sold to another wholly-owned subsidiary, both of which had given security interests in inventory to their respective creditors. *Bank of the West,* 852 F.2d at 1165. Under California's version of RCW 62A.9–312(5), the first to file had priority. Thus, if the Ninth Circuit had required the sold subsidiary to refile a financing statement to maintain perfection, the sold subsidiary's creditors would have lost their priority positions. *Bank of the West,* 852 F.2d at 1172. The Ninth Circuit held that such an application would invite fraud because it would allow a parent company to manipulate the security interests of its subsidiaries by manipulating intercompany transfers. *Bank of the West,* 852 F.2d at 1171. To avoid this result, the Ninth Circuit held that California Commercial Code § 9312(5) did not contemplate the circumstances where collateral is transferred and, thus, applied the general rule that one can alienate no more than one has. *Bank of the West,* 852 F.2d at 1172.

Washington courts have also employed this rule to avoid constructions that encourage fraud. *See Associates Realty Credit Ltd. v. Brune,* 89 Wash.2d 6, 11, 568 P.2d 787 (1977). In *Associates Realty,* a Canadian creditor held a perfected security interest in a mobile home. The creditor perfected its interest

---

9. As a general rule of construction, the Washington's version of the Code "shall be liberally construed and applied to promote its underlying purposes and policies." RCW 62A.1–102(1).

10. RCW 62A.2–403(1) provides, in pertinent part: "A purchaser of goods acquires all title which his or her transferor had or **had power to transfer** except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased." (Emphasis added.)

11. RCW 62A.9–203(1) provides, in pertinent part: "security interest arising under the Article on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless: .... (c) the debtor has rights in the collateral."

12. RCW 62A.9–307 provides, in pertinent part:
**Protection of buyers of goods**
(1) A buyer in ordinary course of business (subsection (9) of RCW 62A.1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest **created by his seller** even though the security interest is perfected and even though the buyer knows of its existence. (Emphasis added.)

13. RCW 62A.9–306 provides, in pertinent part:
**"Proceeds"; secured party's rights on disposition of collateral**
. . . .
(2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.
*See also Southwest Washington Prod. Credit Ass'n v. Seattle-First Nat'l Bank,* 92 Wash.2d 30, 34, 593 P.2d 167, 169 (1979) (security interest survives an unauthorized transfer).

under Canadian law, which did not require the filing of a certificate of title. The owners then moved the mobile home to Washington without the creditor's consent. Shortly thereafter, the owners secured a certificate of title and falsely represented to the Washington Department of Motor Vehicles that they owned the vehicle free and clear. Then, using the certificate of title the owners obtained a bank loan, pledging the mobile home as security. *Associates Realty*, 89 Wash.2d at 8, 568 P.2d 787. The owners argued that subsection (4) of RCW 62A.9–103, that stated that perfection is governed by the law of the jurisdiction issuing a certificate of title, meant that the Canadian creditor was unperfected. *Associates Realty*, 89 Wash.2d at 9–10, 568 P.2d 787. After finding the provision to be ambiguous, the court resorted to the general principles underlying the Code. *Associates Realty*, 89 Wash.2d at 10, 568 P.2d 787. In so doing, it noted that the owners' construction would allow borrowers to defeat their creditors' rights by securing a certificate of title in another jurisdiction. *Associates Realty*, 89 Wash.2d at 12, 568 P.2d 787. The court said that the statute,

> "certainly was not intended to provide a loophole through which swindlers could pass and defeat a security interest legally perfected where it attached. If such were the case, security interests perfected in states requiring certificates of title, and which states provided for perfection by entry on the certificate, could be defeated by the securing of a fraudulent clean certificate in another state."

*Associates Realty*, 89 Wash.2d at 12, 568 P.2d 787 (quoting *General Motors Acceptance Corp. v. Long–Lewis Hardware Co.*, 54 Ala.App. 188, 306 So.2d 277, 281 (1974) (Wright, P.J., concurring specially)). Because the owners' construction would invite fraud, the court declined to adopt it. Instead, the court held that the Canadian's security interest survived the unauthorized transfer of title. *Associates Realty*, 89 Wash.2d at 13, 568 P.2d 787.

This general rule would certainly apply to the situation at hand. The Flooring Lenders' construction would leave a loophole whereby a borrower could defeat a consumer lender's security interest by transferring the motor vehicle to a dealer's inventory that was subject to a previously-filed inventory financing statement.

The court notes that the Code provides three exceptions to the general rule that a transferee of goods acquires no greater rights than those of the transferor: (1) under RCW 62A.9–308, a purchaser of chattel paper or an instrument who gives new value and takes possession of it in the ordinary course of his business has priority over a prior security interest, if he lacks knowledge of the prior security interests; (2) under RCW 62A.9–309 a holder in due course of a negotiable instrument or a purchaser of a securities takes priority over an earlier security interest; and (3) under RCW 62A.9–307, a buyer in the ordinary course takes free of security interests created by the seller. The third is the only exception that arguably applies.

But RCW 62A.9–307(1) requires a "buyer in ordinary course of business" to qualify under the definitional criteria of RCW 62A.1–201(9). *See* RCW 62A.9–307(1). Subsection (9) of RCW 62A.1–201 defines a buyer in the ordinary course as follows:

> "Buyer in ordinary course of business" means a person who in good faith and without knowledge that the sale to him or her is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. All persons who sell minerals or the like (including oil and gas) at wellhead or minehead shall be deemed to be persons in the business of selling goods of that kind. "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

Applying this definition, Debtors would not qualify as a buyer in the ordinary course because neither the consignor nor the trader is in the business of selling motor vehicles.

Nor would the Flooring Lenders qualify as buyers because the Debtors' transfer of any interest in the motor vehicles was solely as security for a money debt.[14]

This court discerns no reason to suppose that the drafters intended to create a new exception for flooring lenders. Nothing in the language of the statute or in any of the policies and principles underlying the statute would justify such an exception.

The Flooring Lenders argue that allowing the Consumer Lenders to perfect by noting their liens on the certificates of title is inconsistent with *Simon v. Chrysler Credit Corporation (In re Babaeian Transportation Co.),* 206 B.R. 536, 545 (Bankr.C.D.Cal.1997). Relying on California's version of the Code,[15] the court held that where a motor vehicle is inventory, perfection may only be accomplished by filing a UCC–1 financing statement. *Babaeian Transp.,* 206 B.R. at 547–551. The Flooring Lenders argue that *Babaeian Transp.* controls since the Washington Code is the same as the California Code.

*Babaeian Transp.* is distinguishable. There, the debtor, Babaeian Transp., bought six motor vehicles from Glendale Dodge, Inc ., which secured payment of the purchase price by noting its security interest on the certificates of title. *Babaeian Transp.,* 206 B.R. at 539. Glendale then assigned its interest to Chrysler Credit Corporation, that eventually merged with Chrysler Financial. *Babaeian Transp.,* 206 B.R. at 539. When Babaeian Transp. filed bankruptcy, the Chapter 11 trustee brought an adversary proceeding seeking a determination that the security interests in six motor vehicles were avoidable because Babaeian Transp. held them in inventory and the creditor failed to file a financing statement. *Babaeian Transp.,* 206 B.R. at 539. The court held that the motor vehicles were inventory and that the only method by which Chrysler could have perfected its security interest in inventory was by filing a financing statement. *Babaeian Transp.,* 206 B.R. at 546. Unlike

*Babaeian Transp.,* where the debtor created the security interest with the seller, Glendale Dodge, here, the pertinent security interest was not one created by "a person who is in the business of selling goods of that kind" as RCW 62A.9–302(3)(b) requires. RCW 62A.9–302(3)(b). Thus, *Babaeian Transp.* is inapposite.

In summary, at least three reasons support the Consumer Lenders' position: (1) the plain language of the statute; (2) economic principles underlying Article 9; and (3) traditional notions of property law that are embodied in the Code. Accordingly, this court holds that the Consumer Lenders' security interests survived their customers' transfers of the motor vehicles to the Debtors.

---

**14.** It has been held that a financing institution is not a buyer in ordinary course. *See Mother Lode Bank v. General Motors Acceptance Corp.,* 46 Cal. App.3d 807, 814, 120 Cal.Rptr. 429, 433 (1975); *First Nat'l Bank and Trust Co. of El Dorado v. Ford Motor Credit Co.,* 231 Kan. 431, 646 P.2d

1057, 1062 (1982) (citing Barkley Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* ¶ 3.4[3] n. 55 (1980)).

**15.** *Babaeian Transp.,* 206 B.R. at 544.