In the Matter of **LEASING CONSULT-ANTS, INCORPORATED, Bankrupt.**

No. 70 B 656.

United States District Court,
E. D. New York.

Nov. 27, 1972.

Zalkin & Cohen, New York City, for petitioner, First National City Bank; Henry Lewis Goodman, New York City, of counsel.

Hahn, Hessen, Margolis & Ryan, New York City, for respondent, George Feldman, Trustee in Bankruptcy of Leasing Consultants, Inc.; Daniel A. Zimmerman, New York City, of counsel.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

This petition to review an order of the referee in bankruptcy presents the first impression question whether the creditor of a New York lessor of heavy equipment, installed in New Jersey by the New Jersey lessee, perfected a security interest. The creditor had filed a financing statement covering "continuing security interest in leases . . . including all related equipment described therein" with the New York Secretary of State in the county where the lessor was located. The creditor had also taken physical possession of the equipment leases and of an assignment by the lessor of its "rights, title and interest" in the leases. While the lessor had filed financing informational statements with the Secretary of State for New Jersey, it had not mentioned the creditor's name. The lease required the equipment to bear a plate stating only "Property of Leasing Consultants, Inc."; no evidence suggests that this term was not complied with.

■ Although none of the statutory or policy arguments advanced emerges as clearly entitled to the greater weight, protection of creditors will best be served if the issue is definitely resolved one way or the other. For the reasons stated below, this court holds that the creditor, not having filed in New Jersey where the machinery was located, was not secured.

## I. FACTS

Leasing Consultants, Inc. (lessor), a corporation whose principal place of business was located in New York, was adjudicated bankrupt on October 14, 1970. It had been involved in the business of leasing machinery, computers and aircraft. To assist in financing this business, in December 1969, the lessor entered into a "Loan and Security Agreement" with petitioner First National City Bank (Creditor), providing in part for the assignment of "a continuing security interest in the lease(s)

and the property leased" as collateral security.

During the period from March to June of 1969, pursuant to the terms of the Loan and Security Agreement, the lessor assigned to the creditor eight personal property leases entered into between the lessor and Plastimetrix Corporation (lessee). The principal place of business of the lessee was in New Jersey where the leased equipment was at all times installed. Together with the assignments, the lessor physically delivered to the creditor the leases. The assignments also provided for the assignment of "the . . . equipment . . . described in the leases."

The lessor filed financing statements "for informational purposes only," covering its interest in the leased equipment with the Secretary of State of the State of New Jersey. The creditor filed financing statements against the lessor with the Registrar of the City of New York, Queens County Division, and with the Secretary of State of New York, covering "continuing security interest in leases . . . including all related equipment described therein." No financing statements were ever filed in the State of New Jersey by the creditor, nor did the creditor take possession of the leased equipment.

In October 1970, the lessee filed a petition under Chapter XI of the Bankruptcy Act in the United States District Court for the District of New Jersey. (The lessor had already been adjudicated a bankrupt.) During that proceeding the leases were apparently terminated and an independent offer to purchase the lessor's interest in the leased equipment for $60,000 was made. The parties in this court agreed to accept the offer and stipulated that the $60,000 would "be substituted for the Property, and the respective rights of the Trustee [of the lessor and the creditor] . . . impressed upon and relegated to said fund of $60,000."

The lessor's trustee applied to the Referee in Bankruptcy in this court for an order directing the creditor to turn over the $60,000 plus interest, all parties agreeing that the sole issue for determination was the following question of law:

"Was the Bank required to file a financing statement against the bankrupt with the Secretary of State of New Jersey in order to perfect a security interest in the equipment leased by the [lessor to the lessee]?"

Answering in the affirmative, the Referee ordered the creditor to turn over the $60,000, plus interest, to the Trustee. The creditor now petitions this court to review that order.

## II. LAW

The avowed purpose of Article 9 of the Uniform Commercial Code is "to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." Uniform Commercial Code § 9–101, Official Comment. To further this aim the drafters of Article 9 eliminated many distinctions among security devices based on form alone. Nevertheless, distinctions based on the type of property constituting the collateral were retained. *Id.*

For purposes of this petition it is assumed that the agreements between the lessor and the lessee were in fact "true leases" and not conditional sales agreements, since the parties have stipulated that "At all times relevant hereto, the bankrupt [lessor] owned the leased equipment, subject to the claims and interests of the Bank [creditor] thereto. . . ."

■■ In a lease transaction, the lessor owns the property. Unlike the situation where the purported lease is really a conditional sales agreement and the "lessor" holds only a security interest in the goods, the lessor in a true lease situation has a reversionary interest. Allen v. Cohen, 310 F.2d 312 (2d Cir. 1962); United States v. Shafto, 246 F.2d 338 (4th Cir. 1957); Levie, Security Inter-

ests in Chattel Paper, 79 Yale L.J. 935, 939 (1969); Hiller, Security Aspects of Chattel Leases in Bankruptcy, 34 Fordham L.Rev. 439 (1966). A reversionary interest is that residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. *See* C. Moynihan, Introduction to the Law of Real Property 94 (1962); Miller v. Commissioner, 147 F.2d 189, 193 (6th Cir. 1945).

■ In the instant case the lessor "granted out" a particular estate in the equipment by leasing it to the lessee; the lessor retained a reversionary interest. By subsequently assigning to the creditor all of its "rights, title and interest in, to and under" the leases and the equipment, the lessor gave to the creditor a security interest in both the right to receive rental payments under the lease and in the reversionary interest in the underlying equipment.

The equipment leases constituted "chattel papers" in New York. Uniform Commercial Code § 9–105(b). Chattel paper can be "collateral," i. e., "property subject to a security interest." Uniform Commercial Code § 9–105(c). Accordingly, the security interest in the chattel papers was properly reflected by the New York filing. Uniform Commercial Code §§ 9–102(1)(a); 9–304(1). Cf. § 9–305. As the Official Comment to the Uniform Commercial Code section 9–103 points out:

> "[I]n contemplation of law and by common understanding and practice the property right or claim evidenced by . . . chattel paper is thought of as being merged in or symbolically represented by the piece of paper. . . . This Article therefore applies to security interests in . . . chattel paper when the relevant pieces of paper are in this State."

■ By contrast, the machines themselves constituted "equipment" located in New Jersey and hence, for perfection purposes, came within the scope of the New Jersey requirements. Uniform Commercial Code §§ 9–105(f); 9–109(2); 9–102(1). Since the creditor did not perfect its interest in the reversion in New Jersey where the equipment was located, the lessor's trustee—a lien creditor within the meaning of Uniform Commercial Code § 9–301(3)—has priority over an unperfected security interest under § 9–301(1)(b).

The distinction in this situation between rights under the chattel paper and under the equipment—including the reversionary interest—is emphasized by Professor Levie, who points out:

> "In one situation the purchaser of a security agreement may have an advantage over the purchaser of a lease. Where [he] purchases equipment leases, he takes only an assignor's interest in the equipment lease itself. If [he] wishes to be secured by an interest in the goods as well, he must obtain a security interest . . . [in the goods] and perfect it." Levie, Security Interests in Chattel Paper, 78 Yale L.J. 935, 940 (1969).

Practical considerations support this conclusion. The property leased was heavy manufacturing equipment. A potential creditor observing these complicated and non-portable machines should be entitled to believe that he could discover all non-possessory interests by consulting the files in the state where the equipment is located. The equipment was obviously of great value; the New Jersey files revealed only that the lessee held it under a lease. Since the lease agreement required each piece of equipment to have a plate affixed indicating that it was the "property" of the lessor, judgment creditors of the lessor might assume that its reversionary interest in the equipment was of substantial value. Not being alerted to the diminution of value which would be effected by the creditor's security interest, they might then, for example, attach the lessor's interest, relying on an apparently

unencumbered and valuable reversionary interest.

It is true that the drafters of Article 9 were concerned with eliminating technical distinctions and meaningless pitfalls so that "a secured party, who has complied with this article need no longer fear the loss of his security interest because he has called it by one name rather than another and so has filed in the wrong set of books." Comment to Uniform Commercial Code § 9–101 (1952 draft). But we do not have here a filing in a "wrong set of books"; it is rather a failure to file at all in a state.

The distinction between the rights represented by the lease and those represented by the reversionary interest in the equipment is a real one, supported by logic and precedent. To ignore the distinction contributes neither to clarity nor uniformity under the Uniform Commercial Code. Moreover, it may mislead third party creditors. The simple solution for a bank in the situation of petitioner is to file notices as to its interest in the reversion in accordance with the law of the state where the equipment is located.

At the hearing on this petition the parties stipulated that the $60,000 sum, representing all of creditor's "right, title, and interest" in the equipment, was to be awarded intact either to the trustee as lien creditor or to creditor as secured creditor. *See* Uniform Commercial Code §§ 9–301(3); 9–105(1)(i). The court will honor the agreement to keep the sum intact, even though the $60,000 could be construed to represent two property interests distinguishable under Article 9—an interest in the leasehold, perfected by the creditor, and an unperfected interest in the reversion.

### III. CONCLUSION

Accordingly, the order of the Referee in Bankruptcy dated June 21, 1972 directing the turnover by First National City Bank of $60,000 plus interest to the trustee must be affirmed.

So ordered.