### In re KENECO FINANCIAL GROUP, INC., Debtor.

**Bankruptcy No. 90 B 13761.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 5, 1991.

Brian W. Norbett, Riordan, Larson, Bruckert & Moore, Chicago, Ill., for Suburban Nat. Bank of Palatine.

John N. Bilanko, Barrington, Ill., for debtor.

MEMORANDUM OPINION ON MOTION OF SUBURBAN NATIONAL BANK OF PALATINE TO PROHIBIT DEBTOR'S USE OF CASH COLLATERAL AND TO SEGREGATE CASH COLLATERAL

JACK B. SCHMETTERER, Bankruptcy Judge.

Suburban National Bank of Palatine ("Suburban National"), (as successor in interest by merger to Suburban National Bank of Woodfield) moved this Court to prohibit Debtor Keneco Financial Group, Inc. ("Debtor") from using Suburban National's cash collateral, and to maintain such cash collateral in a segregated account pending further order of Court ("Motion"). Suburban National asserted that its cash collateral consists of "rent" payable to Debtor under certain lease agreements entered into between Debtor as lessor and various third parties as lessees (the "House Leases"). At issue was whether a pre-petition security interest held by Suburban National covers post-petition "rent" received by or owed to Debtor under the House Leases.

Certain documents not in dispute were presented by the pleadings, but both parties waived their opportunity to offer further evidence. Having considered uncontroverted documents, argument of counsel, the pleadings filed and record of proceedings, on April 1, 1991 this Court entered an Order allowing the Motion, for reasons stated below.

### UNDISPUTED FACTS

Debtor is an equipment leasing company engaged in leveraged leasing transactions. In such transactions, typically a customer of Debtor placed an order for certain equipment and assigned the purchase order to Debtor, whereupon Debtor purchased the equipment and leased it back to the customer. Debtor then used the lease as collateral for a bank loan, the proceeds of

which are used to pay off the equipment purchase.

On March 23, 1990, Debtor executed a promissory note ("Note") in favor of Suburban National in the principal amount of $304,993.31, to be repaid in 84 monthly installments of $5,414.35, commencing April 23, 1990. Debtor executed the Note in order to refinance its outstanding debt to Suburban National.

As security for the Note, on March 23, 1990, Debtor executed a security agreement ("Security Agreement") in which Debtor granted to Suburban National a security interest in "All Inventory, Chattel Paper, Accounts, Contract Rights, Equipment and General Intangibles." Suburban National perfected its security interest by filing a U.C.C.—1 Financing Statement on March 29, 1990 (the "Financing Statement").[1] The Financing Statement provides that Suburban National has a security interest in:

> All inventory, Chattel Paper, Accounts, Contract Rights, Equipment, and General Intangibles; whether now owned or acquired later; all accessions, additions, replacements, and substitutions; all records of any kind relating to the foregoing; all proceeds (including insurance, general intangibles, and account proceeds) * All products and produce of any kind of the property described in this collateral section.

---

\* specifically excluding however any lease and lease schedule and the equipment subject thereto, which secures specific loan advances made by any other secured party now or hereafter.

Debtor has been in default under the Note since April 24, 1990. The amount owed to Suburban National pursuant to the Note as of March 5, 1991 is $336,862.17. On July 30, 1990, Debtor filed a voluntary petition pursuant to Chapter 11 of the U.S. Bankruptcy Code ("Code"). Since that time Debtor has been operating as debtor-in-possession.

In January 1991, Debtor filed with the Court its Lease Receivables Report ("Report"). In that Report, Debtor set forth the names of 36 leases which it termed "House Leases." It was originally undisputed that those leases had not been pledged as security to any party other than Suburban National ("House Leases"). After the Report was filed, however, it was discovered that 4 of the 36 leases were in fact assigned as security to a third party, Hoffman Estates. There may also be additional House Leases which were not listed on the January Report.

On or about March 6, 1991, Suburban National filed the present Motion seeking to prohibit Debtor's use of cash collateral in the form of proceeds under the House Leases ("House Rents"), and to maintain said proceeds in a segregated account pending further order from the Court. Debtor responded to the Motion by arguing that the Financing Statement does not cover proceeds from the House Leases, and that therefore Suburban National does not have a perfected security interest in the House Rents. Thus, Debtor concluded that the House Rents do not constitute cash collateral pursuant to Section 363(a) of the Code.

On April 1, 1991, the Court entered an Order allowing Suburban National's Motion. The Order barred Debtor's use of cash collateral without leave of Court, and ordered Debtor to deposit in a segregated interest-bearing account all House Rents for which Debtor has not made any collateral assignment to a party other than Suburban National. The reasons for the Court's Order are stated hereinbelow.

## DISCUSSION

### Jurisdiction

United States District Courts have subject matter jurisdiction over cases arising

---

1. Debtor points out that the Security Agreement itself provides that the security interest was perfected by the filing of a UCC-1 financing statement on October 31, 1988. Suburban National explains that the March 29, 1990 Financing Statement merely "renewed" the previous October 31, 1988 financing statement. Whether it was the filing of the March 29, 1990 or the October 31, 1988 financing statement which perfected Suburban National's security interest is not relevant to the Court's inquiry here, since it is undisputed that the security interest was in fact perfected before the bankruptcy proceeding was filed.

under, arising in, or related to proceedings under Title 11. 28 U.S.C. § 1334(a), (b). Each District Court is authorized to refer such proceedings to bankruptcy judges. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such referral pursuant to Local Rule 2.33.

In a core proceeding that arises in or under Title 11, a bankruptcy judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(b)(1). This proceeding is a core proceeding under Section 157(b)(2)(M) which specifically provides that orders approving the use of cash collateral constitute core proceedings. 28 U.S.C. § 157(b)(2)(M).

### Perfection of Security Interest in House Rents

At issue here is whether Suburban National has a perfected security interest in the post-petition House Rents. In order to reach that issue, the Court first must look to the Financing Statement in conjunction with the underlying Security Agreement. All transactions occurred in Illinois and are governed by Illinois law.

▮ Debtor points out that the description of "Collateral" contained in the Security Agreement is broader than the description of collateral set forth in the Financing Statement. Specifically, the Security Agreement provides a security interest in "All Inventory, Chattel Paper, Accounts, Contract Rights, Equipment and General Intangibles," whereas the Financing Statement includes an exclusionary clause which excepts from the collateral "... any lease ... which secures specific loan advances made by any other secured party now or hereafter" ("exclusionary clause"). It is well established that just as a financing statement cannot add collateral that is not covered by the security agreement, a security agreement cannot yield a perfected interest in items that are not mentioned in the financing statement. *See* Clarke On Secured Transactions ¶ 2.09[5][6] (2d ed.1988). Thus, a financing statement, if more limited in scope than the security

agreement which it perfects, "limits the collateral in which the creditor has a perfected security interest to that description...." *In re Door Supply Center, Inc.*, 3 B.R. 103, 105 (Bankr.D. Idaho 1980). *See also Allis–Chalmers Corp. v. Staggs*, 117 Ill.App.3d 428, 453 N.E.2d 145, 148 (5th Dist.1983) ("The function of the financing statement is merely to put third parties on notice that the secured party who filed it may have a perfected security interest in the collateral described"). Thus, in determining whether Suburban National's security interest is perfected as to the House Rents, the Court looks to the narrower description of collateral contained in the Financing Statement.

Subsequent to filing of a bankruptcy petition, the status of a security interest is governed by Section 552(b) of the Bankruptcy Code, Title 11 U.S.C. that provision provides an exception to the general rule that pre-petition security interests do not extend to property acquired post-petition by the debtor. *See In re Investment Hotel Prop.*, 109 B.R. 990, 995 (Bankr.D.Colo. 1990). Section 552(b) provides in relevant part that (with certain exceptions not relevant here)

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. 11 U.S.C. § 552(b).

▮ Thus, Section 552(b) provides that post-petition proceeds of collateral will be subject to a creditor's security interest only if the creditor has a valid pre-petition security interest in the underlying collateral.

See *In re Mark Twain Marine Indus., Inc.*, 115 B.R. 948, 952 (Bankr.N.D.Ill. 1990); *In re Funding Systems Asset Mgmt. Corp.*, 111 B.R. 500, 521 (Bankr. W.D.Pa.1990). Whether Suburban National's security interest extends to the House Rents acquired by Debtor post-petition depends on whether Suburban National's security interest covers the underlying collateral, namely the House Leases.

■ The Uniform Commercial Code as adopted in Illinois similarly provides that if the interest in the original collateral is perfected, the security interest in the proceeds of that collateral is also perfected. *See* Ill.Rev.Stat., ch. 26 ¶ 9–306(3). Section 9–306(2) provides that a security interest in any type of property "continues in any identifiable proceeds" of that property. "Proceeds" is a term defined in § 9–306(1) as including "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." Ill.Rev. Stat., ch. 26 ¶ 9–306(2). Finally, § 9–306(3) specifically provides, with exceptions not relevant here, that "[t]he security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected...." Ill.Rev. Stat., ch. 26 ¶ 9–306(3). Thus, so long as the underlying collateral is perfected, a creditor has a perfected security interest in the proceeds of the collateral even if the term "proceeds" is absent from the security agreement or financing statement.[2] *In re Natl. Financial Alternatives, Inc.*, 96 B.R. 844, 847 (Bankr.N.D.Ill.1989); *In re Lorenz*, 57 B.R. 734, 736 (Bankr.N.D.Ill. 1986).

In accordance with § 9–306(3) of the Uniform Commercial Code, courts have consistently found that if a creditor has a perfected security interest in a lease, then the "rent" generated by that lease constitutes "proceeds" in which the creditor also has a perfected security interest. *See In re Cleary Bros. Construc. Co.*, 9 B.R. 40, 41 (Bankr.S.D.Fla.1980) ("The way to create a security interest in rent under the U.C.C. is to assign the lease or to give a security interest in the lease. The rent would then be the proceeds of the collateral...."); *Feldman v. Philadelphia National Bank*, 408 F.Supp. 24, 37–38 (E.D.Pa.1976) (in which the court stated, before finding that a creditor had a perfected security interest in lease payments because it had taken possession of the lease, "[a] secured party is entitled to rent which represents the proceeds of ... a lease"); *In re A.E.I. Corp.*, 11 B.R. 97, 101 (Bankr. E.D.Pa.1981) ("... proceeds [under U.C.C. § 9–306] do not include rental payments when the security interest does not cover the lease of the collateral"); *In re Investment Hotel Prop., Ltd.*, 109 B.R. 990, 995 (Bankr.D.Colo.1990) (".... the creditor must have a perfected interest in the 'rent' by obtaining a security interest in the existing 'lease'.... Then, the payment received for the use of the collateral is viewed as *proceeds* of that collateral").

In *Cleary* and *A.E.I.*, each respective court found that a creditor did not have a perfected security interest in rents owed under a lease because the creditor did not have a perfected security interest in the lease itself, but merely in the equipment being leased. In *Cleary*, the court found that although the creditor held a perfected first lien against a crane, the creditor did not have an interest in the lease of the crane since the financing statement referred to a permanent disposition of collateral rather than a temporary use such as leasing. *Cleary*, 9 B.R. at 41. Therefore, the term "proceeds of collateral" in the financing statement could refer only to proceeds from the sale of the crane rather than from its lease. *Id.* Similarly, the *A.E.I.* court observed that the terms of the security agreement expressly limited the security interest to the named collateral, and did not reach the lease of said collateral. *See also In re Leasing Consultants, Inc.*, 351 F.Supp. 1390, 1393 (E.D.N.Y.1972) (in which the court emphasized that there is a distinction between rights under a lease

---

**2.** In this case, the term "proceeds" was in fact included in the description of collateral contained in the Financing Statement.

and rights under the equipment being leased).

■ Thus, contrary to Debtor's assertions,[3] the Court need only find that Suburban National has a perfected security interest in the House Leases in order to find that the security interest also covers the proceeds of the House Leases, or, the House Rents.[4] Pursuant to Section 552(b) of the Bankruptcy Code, the Court looks to applicable nonbankruptcy law and relevant security documents in making such a determination.

■ Debtor argues that because the term "lease" is not included in the description of collateral contained in the security documents, the House Leases are not subject to Suburban National's security interest. However, both the Security Agreement and the Financing Statement provide that Suburban National has a security interest not only in the "Equipment" being leased, but also in "Chattel Paper." It is well established that leases such as the House Leases are chattel paper.

First, U.C.C. § 9–105(1)(b) as adopted in Illinois defines the term "chattel Paper" as meaning

a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods.... When a transaction is evidenced by an instrument or series of instruments, the groups of writings taken together constitutes chattel paper. Ill.Rev.Stat., Ch. 26 ¶ 9–105(1)(b).

The House Leases are writings which evidence not only a lease of specific goods, but also both a monetary obligation and a security interest.[5] The Official Comment to Section 9–105 notes that "[a] straight lease of specific personal property—that is, one not intended as a security agreement ... is ... chattel paper.... [as] is a lease which is intended to create a security interest." Comment, Ill.Rev.Stat., ch. 26 ¶ 9–105.

Second, courts without exception revealed by research have found that the term "chattel paper" includes leases of personal property. *See e.g., In re Funding Systems Asset Mgmt. Corp.,* 111 B.R. 500, 517 (Bankr.W.D.Pa.1990) ("Both the master leases [in a business devoted to leveraged leasing of computer equipment] and the equipment schedules constitute chattel paper"); *In re Leasing Consultants, Inc.,* 351 F.Supp. 1390, 1393 (E.D.N.Y.1972) ("equipment leases [in a leveraged leasing business] constitute[ ] 'chattel papers' "); *Feldman v. Philadelphia National Bank,* 408 F.Supp. 24, 37 (E.D.Pa.1976) ("A secured party is entitled to rent which represents the proceeds of chattel paper, i.e. a lease"). *See also* Clarke On Secured Transactions ¶ 1.05[7] (in which the author observed, after referring to a hypothetical involving a bank's financing of an equipment lessor, that "[t]he lease agreements themselves would qualify as chattel paper, whether considered bona fide leases or disguised installment contracts"). Thus, because Debtor granted Suburban National a security interest in its chattel paper, Suburban National has a security interest in the House Leases.

Suburban National's security interest in the House Leases was perfected by the filing of the Financing Statement. A security interest in chattel paper may be per-

---

3. Debtor contends that something more than the perfection of a security interest in a lease is needed in order for that security interest to extend to post-petition rent, but fails to provide any support for that proposition. Although Debtor cites to *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) and *In re Michigan Ave. Natl. Bank,* 2 B.R. 171 (N.D.Ill. 1980), the issue in those two cases was what action must be taken by a mortgagee to activate his rights to rents generated by real property, as opposed to rents generated by the lease of personal property. Thus, *Butner* and *Michigan Ave.* are inapplicable to the proceeding here.

4. As proceeds, the House Rents accordingly would constitute cash collateral of Suburban National pursuant to Section 363(a) of the Code, which includes as cash collateral "the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b)...." 11 U.S.C. § 363(a).

5. Suburban National alleges, and Debtor does not deny, that all of the House Leases are accompanied by security agreements granting Debtor a security interest in the goods being leased.

fected either by filing of a financing statement under U.C.C. § 9–302, or by taking possession of the lease under U.C.C. § 9–305. Ill.Rev.Stat., ch. 26 ¶ 9–302, ¶ 9–305. *See also* Clarke On Secured Transactions ¶ 1.05[8] ("... a security interest in chattel paper may be perfected either by filing or taking possession of the lease"); *Leasing Consultants*, 351 F.Supp. at 1393 (in which the court found that the filing of a financing statement properly perfected a security interest in an equipment lease). Therefore, because Suburban National perfected its security interest in the House Leases pre-petition, Suburban National also has a perfected security interest in the post-petition proceeds of those leases, namely the House Rents.

Debtor argues that the exclusionary clause must be read as evidence that the Financing Statement was not intended to cover the House Rents. The exclusionary clause excludes from Suburban National's security interest "any lease ... which secures specific loan advances made by any *other* secured party now or hereafter" (emphasis supplied). Debtor contends that Debtor could not have intended Suburban National's security interest to extend to the House Rents, as evidenced by the insertion of the exclusionary clause, otherwise Debtor would have been prohibited by the security agreement from placing other liens on the leases. Such a prohibition would have resulted in an inability by Debtor to fund new lease transactions and operate its business. However, Debtor's contention is without merit since clearly the Debtor could have been allowed to place additional junior liens on the House Leases in order to continue funding its business.

Moreover, the plain meaning of the exclusionary clause is simply that leases and related equipment are to be excluded from Suburban National's security interest in the event such leases secure present or future loans from parties "other" than Suburban National. The parties' intent to include all other leases, such as the House Leases, is apparent from the document. Debtor does not dispute that the House Leases have not been pledged as collateral for any loans other than the loan made to Debtor by Suburban National. Therefore, the House Leases do not fall within the exclusionary clause. Suburban National has a perfected security interest in the House Leases and their proceeds so long as Debtor has not made a collateral assignment to a party other than Suburban National.

Finally, Debtor contends that certain equitable considerations defeat Suburban National's interest in the House Leases and their proceeds. Debtor argues that the parties could not have intended the creation of a security interest in the House Leases, in particular because such intent is inconsistent with the parties' prior business dealings, and that Debtor signed the security documents without review by counsel and during times of financial difficulty. However, even if such considerations were relevant, that argument is not credibly supported by the weight of evidence. In addition, Debtor claims that Suburban National's interpretation of the security documents makes no sense in light of the way a leveraged leasing company does business. However, Debtor again fails to provide factual evidence or authority to support that contention. Indeed, it may be inferred from the evidence that the practice of granting creditors security interests in leases and their proceeds is a customary method for leveraged leasing companies such as Debtor to conduct their business.

## CONCLUSION

Suburban National has a perfected security interest in the House Rents. Proceeds from that security constitute Suburban National's cash collateral under Section 363(a) of the Bankruptcy Code. Use of such cash collateral is therefore governed by Section 363 of the Code which requires a debtor to segregate and account for any cash collateral in its possession, and to obtain the consent of either the creditor in interest or the court before using the cash collateral. 11 U.S.C. § 363(c)(2) and (4). Debtor failed to follow these requirements.

Accordingly, by separate order entered previously on April 1, 1991, Suburban Na-

tional's Motion to prohibit use of cash collateral and segregate same pending further order of the Court, was allowed.