**In re the BENNETT FUNDING GROUP, INC., Bennett Receivables Corporation, Bennett Receivables Corporation II, Bennett Management and Development Corporation, Debtors.**

**Bankruptcy Nos. 96–61376 to 96–61379.**

United States Bankruptcy Court,
N.D. New York.

Oct. 22, 1996.

---

■■■■■■■■■■■■

Simpson, Thacher & Bartlett (M.O. Sigal, of counsel), New York City, for § 1104 Trustee.

Wasserman, Jurista & Stolz (Harry Gutfleish, of counsel), Millburn, NJ, for Unsecured Creditors Committee.

Michael Collins, Assistant U.S. Trustee, Utica, NY.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

### STEPHEN D. GERLING, Chief Judge.

Presently before this Court are approximately 95 motions filed on behalf of various banks ("Banks") seeking either relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"), or in the alternative, adequate protection of their interest in certain leases and the income streams derived therefrom pursuant to Code § 363(e). On August 15, 1996, after hearing numerous oral arguments on the motions, the Court held a status conference to address various factual and legal matters common to most, if not all, of the Banks' motions. At the status conference the attorneys representing the Banks were directed to submit memoranda of law addressing the limited legal issue of what proof is necessary to establish the validity and perfection of their alleged security interest in the leases and the income stream generated therefrom. The issue was submitted for decision by the Court on September 9, 1996.[1]

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of these contested matters pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A), (G), (M) and (O).

## FACTS

Voluntary petitions were filed under Chapter 11 of the Code by four related corporate entities, namely The Bennett Funding Group, Inc. ("BFG"), Bennett Receivables Corporation, Bennett Receivables Corporation II, and Bennett Management and Development Corporation (hereinafter jointly referred to as "Initial Debtors"), on March 29, 1996.[2] On April 18, 1996, Richard C. Breeden was appointed trustee ("Trustee") by the U.S. Trustee pursuant to Code § 1104 in the cases of the Initial Debtors, and said appointment was approved by this Court the same day.

Prior to filing, BFG was in the business of originating, purchasing and selling commercial leases of copy machines and other office equipment. For purposes of obtaining loans to finance its operations, various leases in which BFG was a lessor were compiled into portfolios designed to provide for the payment of loan principal and interest to the Banks according to an amortization schedule. BFG in most cases collected the lease payments from the individual lessees and remitted the monies to the Banks on a monthly basis pursuant to the terms of a Servicing Agreement (See, e.g. Exhibit "F" of Memorandum of Law of Hancock & Estabrook).[3] In addition to the Servicing Agreement, the Banks allege actual possession of the following documents:

1. Bill of Sale by BFG which purports to convey all of its right, title and interest in the leases, as well as the equipment sub-

---

1. This decision, unless reversed on appeal, shall constitute the "law of the case," and the legal determination made herein controls if and when the same question again presents itself in this case by other parties similarly situated who have not heretofore filed motions pursuant to Code § 362(d) or § 363(e). See In re PCH Associates, 949 F.2d 585, 592 (2d Cir.1991).

2. The Court approved the joint administration of the Initial Debtors on May 3, 1996.

3. In many instances payment to the Banks was facilitated through the use of an Advance Payment Account set up with an individual bank from which the monthly payments were debited by the bank and to which BFG made regular deposits as payments were received from the various lessees. See e.g. Exhibit "E" of Memorandum of Law of Hancock & Estabrook. (The Court has considered the exhibits attached to the Memorandum of Law of Hancock & Estabrook as they appear to be typical of those referenced by various other Banks.)

ject to the leases (*see e.g.* Exhibit "A" of Memorandum of Law of Hancock & Estabrook);

2. Assignment of Contracts from BFG of all of its interest in the equipment leases (*see, e.g.* Exhibit "B" of Memorandum of Law of Hancock & Estabrook);

3. Guarantee from BFG securing repayment of the obligations due under the equipment leases (*see, e.g.* Exhibit "C" of Memorandum of Law of Hancock & Estabrook);

4. Promissory Note from BFG securing repayment of the obligations to the Bank, to which is attached an amortization schedule of monthly payments with respect to the leases (*see, e.g.* Exhibit "D" of Memorandum of Law of Hancock & Estabrook);

5. Original leases, including a description of the leased equipment, as well as the identification of the lessee and a schedule of payments to be made by the lessee (*see, e.g.* Exhibit "G" of Memorandum of Law of Hancock & Estabrook).

In addition, the Banks allege that upon obtaining possession of the originals of the leases, financing statements were executed by BFG and filed with the New York Secretary of State and the Onondaga County Clerk's office (*see, e.g.* Exhibit "H" of Memorandum of Law of Hancock & Estabrook). Allegedly attached to each financing statement was a "Schedule A" which identified each of the leases in the particular portfolio, including information regarding the lease number, lessee, original term, remaining term, monthly payment, and principal amount.

4. For example, the lease and the financing statement attached as exhibits to the Memorandum of Law of Hancock & Estabrook list the lessor/debtor as "Aloha Leasing, A Division of Bennett Funding Group, Inc." (*see* Exhibits "G" and "H" of Memorandum of Law of Hancock & Estabrook).

5. For purposes of this discussion, the Court will rely on the New York Uniform Commercial Code ("NYUCC"). None of the memoranda of law submitted by the Banks indicate any material

## ARGUMENTS

The Banks take the position that they hold a perfected security interest in both the leases and the income streams derived therefrom by virtue of their having filed proper financing statements, as well as being in possession of the original leases. The Trustee contends, however, that in some instances the security interests of the Banks may not have been properly perfected and that as a hypothetical lien creditor pursuant to Code § 544(a) he is entitled to avoid the security interests. For instance, the Trustee has alleged that in certain cases the financing statement does not properly identify BFG as the debtor.[4] The Trustee also contends that in some instances more than one entity may hold the "original" lease. The Trustee makes the argument that if there have been substitutions of leased equipment, the Banks in those instances do not hold "chattel paper" as to specific goods and, instead, more appropriately should be construed as asserting a security interest in "general intangibles" for which mere possession of the leases is not sufficient to perfect their interests.

## DISCUSSION

### Applicable Law

Article 9 of the Uniform Commercial Code ("UCC")[5] "sets out a comprehensive scheme for the regulation of security interests in personal property and fixtures. * * * The aim of this Article is to provide a simple and unified structure within which the immense variety of present day secured financing transactions can go forward with less cost and with greater certainty." Official Comment to New York UCC § 9–101 (McKinney 1990 & Supp.1996).

NYUCC § 9–105(1)(b) defines "chattel paper" as

differences between New York's UCC and that of the other states in which those banks are located. The Court recognizes that pursuant to NYUCC § 9–103(1)(b) if a non-possessory interest in chattel paper is asserted, then the law of the jurisdiction in which the "debtor" is located governs perfection; otherwise, if the security interest is based on possession of the chattel paper, then the law of the jurisdiction where the collateral is located when the last event occurred is the governing law with respect to perfection.

a writing or writings which evidence both a monetary obligation and a security interest in [6] or a lease of specific goods.... When a transaction is evidenced both by such a security agreement or a lease and by an instrument or series of instruments, the group of writings taken together constitutes chattel paper.

Pursuant to NYUCC § 9–102, Article 9 applies *inter alia* to any transaction which is intended to create a security interest in chattel paper. NYUCC § 9–102(1)(a). It also applies to any sale of chattel paper.[7] NYUCC § 9–102(1)(b).

The UCC sets forth general rules for "perfecting" a security interest which prevent insolvency proceedings or attacks by other creditors from defeating that security interest. For example, pursuant to NYUCC § 9–305, a security interest in chattel paper may be perfected by having the secured party take possession of the chattel paper. *In re Commercial Management Service, Inc.*, 127 B.R. 296, 304 (Bankr.D.Mass.1991); *In re Keneco Financial Group, Inc.*, 131 B.R. 90, 95 (Bankr.N.D.Ill.1991); *In re ICS Cybernetics, Inc.*, 123 B.R. 467, 476 (Bankr.N.D.N.Y. 1989), *aff'd* 123 B.R. 480 (N.D.N.Y.1990). Section 9–304(1) also provides that a security interest in chattel paper may be perfected by filing a financing statement. *Keneco Financial Group*, 131 B.R. at 96. In New York State, the proper place to file a financing statement is "in the department of state and in addition, if the debtor has a place of business in this state and in only one county of this state, also in the office of the filing officer of such county." NYUCC § 9–401(1)(c); *See also In re Woodfield Furniture Clearance Center of Suffolk, Inc.*, 102 B.R. 327 (Bankr.E.D.N.Y.1989); *In re Mimshell Fabrics, Ltd.*, 491 F.2d 21 (2d Cir.1974); *In re P.S. Products Corp.*, 435 F.2d 781 (2d Cir.1970).

Section 9–402 of the NYUCC sets forth the formal requisites of a financing statement. These include the names of the debtor and the secured party, signature by the debtor, address of the secured party, mailing address of the debtor and a statement indicating "the types, or describing the items, of collateral." With respect to the name of the debtor, NYUCC § 9–402 provides that in the case of a corporate debtor, the name of the corporation is sufficient, although trade names of the debtor may also be added. Furthermore, NYUCC § 9–402(8) states that a financing statement "substantively complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

*Analysis*

Equipment leases have been found to be chattel paper. *See In re Leasing Consultants, Inc.*, 486 F.2d 367, 370 (2d Cir. 1973). The critical factor to be considered in this regard is whether the lease both evidences the lessee's monetary obligation and is for specific goods. It is essential that the leases identify the lessee and also state the amount and number of rental payments to be made by the lessee in order to be deemed chattel paper. *See ICS*, 123 B.R. at 475. The equipment subject to the leases must also be identified. For example, Exhibit "G" of the Memorandum of Law of Hancock & Estabrook identifies the lessee as "Johnston Public Schools, Johnston, Rhode Island", and indicates that there are to be 36 monthly payments of $75.05 for the lease of an Okifax 21000, Serial Number 215448.[8]

If the Banks are able to establish the existence of chattel paper in compliance with the above criteria, they then must provide evidence that the alleged security interests in the leases have "attached" in order for the

---

6. Although the Banks also claim a security interest in the leased equipment, that particular issue is not the subject of the Court's analysis herein.

7. In some instances, the Banks have also asserted that they own the chattel paper. As noted in the Official Comment to NYUCC § 9–102, often the sale of chattel paper is indistinguishable from its assignment as security.

8. The Trustee alleges that in some instances equipment may have been replaced or substituted without notification or issuance of a new lease reflecting same. If the Trustee is able to establish such a substitution, the Court will address it on an individual basis.

Banks to be able to enforce said interests against third parties, including the Trustee. NYUCC § 9–203(1) sets forth three requirements for attachment, namely, (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; (b) value has been given; and (c) the debtor has rights in the collateral. In addition, "[u]nless otherwise agreed the security agreement gives the secured party the rights to proceeds provided by Section 9–306." NYUCC § 9–203(3).

■ The above requirements may be met as follows: First, the Banks must establish that they are in possession of the original leases, executed by both the lessor and the lessee or, in the alternative, they must provide evidence of a security agreement signed on behalf of BFG which identifies those leases. The Banks contend that they are prepared to present the Court with evidence of each of their respective Assignments of Contracts[9] granting a security interest in the leases, along with the other documents referenced therein and executed by BFG, including Bills of Sale, Guarantees and Promissory Notes ("Documents"). Insofar as the Banks must prove that value has been given under NYUCC § 9–203(1)(b), the Court also requires that, in addition to the Assignment of Contracts, it be provided with the original Promissory Note executed by BFG in favor of the specific Bank evidencing the particular transaction. Finally, neither the Banks nor the Trustee appear to dispute that BFG had rights as the lessor in the leases at the time of their execution as required under NYUCC § 9–203(1)(c).

Once the Banks have demonstrated attachment of their interests in the collateral, they then have the burden of establishing that their security interests have been properly perfected. As discussed above, it is possible to perfect a security interest in chattel paper either by possession of the chattel paper or by filing a financing statement covering the chattel paper.

This Court previously addressed the issue of how a creditor perfects a possessory security interest in leases of computer equipment. *See ICS*, 123 B.R. 467. In *ICS* the Court concluded that in order to perfect an interest in a lease of computer equipment, which was deemed to be "chattel paper", the creditor had to be in possession of the original copy of the equipment schedule which evidenced both a monetary obligation and a lease of specific equipment. *Id.* at 475–476. In this case, it is the leases themselves which constitute chattel paper. In order to perfect a possessory security interest in a lease, it is necessary that each Bank provide an ink-signed original lease executed by both the lessor and the lessee. The lease should not only identify the lessor and lessee, but also must set forth the information identifying the specific equipment by model and serial number, as well as the lease term and the payments to be made by the lessee. Presentation of a fully executed ink-signed original lease shall constitute perfection of the Bank's security interest in the particular lease in the absence of any evidence that other ink-signed original leases in identical equipment exist or that there has been a substitution/replacement of the particular equipment identified in the lease.

As an alternative to asserting possessory security interests in the chattel paper, the Banks also allege that they have perfected their security interests by virtue of filed financing statements pursuant to NYUCC § 9–304(1). All parties agree that in order for the filing to be effective, the Banks must provide proof that the financing statements were filed with both the office of the New York Secretary of State and with the Onondaga County Clerk's office. There is also no dispute that to be effective the Banks must establish that the financing statements contain the names of the "debtor" and the secured party, the signature of the debtor, address of the secured party, mailing address of the debtor and a statement indicating "the types, or describing the items, of collateral." The primary source of dispute from a legal

9. NYUCC § 9–102(2) recognizes that a security interest in the chattel paper may be created by an assignment.

perspective centers on the proper name of the "debtor." [10]

A financing statement is intended to alert a potential creditor to the possibility of a pre-existing security interest in the collateral. *In re Atlas Technologies, Inc.*, 78 B.R. 394, 397 (E.D.N.Y.1987); *see also Pearson v. Salina Coffee House, Inc.*, 831 F.2d 1531, 1536 (10th Cir.1987) (stating that filing of a financing statement is intended to make creditors aware of any prior security interest in collateral that may be superior to their own.); *In re Greenbelt Co–Op., Inc.*, 124 B.R. 465, 469 (Bankr.D.Md.1991) ("[P]urpose of the statute (UCC § 9–402) is to give to notice to third parties of a security interest held by a creditor in the assets of a particular debtor."). In the contested matters *sub judice*, a critical issue is whether the financing statements properly identify the "debtor", such that parties "searching the record" would be put on notice of a potential pre-existing security interest. Specifically at issue is whether the existence of a "trade" name on the financing statements sufficiently identifies the "debtor", thus satisfying the requirements of the UCC.

On July 2, 1978, as part of the 1972 revision of the UCC, NYUCC § 9–402(7) took effect, providing in part that a financing statement "sufficiently shows the name of the debtor if it gives the . . . corporate name of the debtor, whether or not it adds other trade names . . .". *See generally Fleet Factors Corp. v. Bandolene Industries Corp.*, 86 N.Y.2d 519, 523, 658 N.E.2d 202, 205, 634 N.Y.S.2d 425, 428 (1995). In arguing that the financing statements filed by the Banks do not properly identify the Debtor and, therefore, do not satisfy the perfection requirements of the UCC, the Trustee relies on a case decided by the Second Circuit Court of Appeals twenty-four years ago. *See In re Leichter*, 471 F.2d 785 (2d Cir.1972). In *Leichter* the creditor had filed a financing statement under the trade name of the debtor, "Landman Dry Cleaners", without any

additional reference to the legal name of the debtor, Mark R. Leichter. The court concluded that a third party searching under the debtor's actual name, "Leichter", would not have been provided with notice of the creditor's security interest since it was indexed under "Landman". *Id.* at 787.

Also cited by the Trustee is *Matter of Centennial Industries, Inc.*, 3 B.R. 416 (Bankr.S.D.N.Y.1980), in which the bankruptcy court found that a financing statement identifying the debtor as "Jabro Auto Parts Warehouse, Division of Centennial Industries, Inc." was insufficient to validate the creditor's security interest. *Id.* at 418. In support of its position, the court in *Centennial* relied on *Leichter* as well as a state court decision rendered in 1976 (*See Matter of Pasco Sales Co., Inc.*, 52 A.D.2d 138, 383 N.Y.S.2d 42 (2d Dept.1976)). In *Pasco* the financing statement had been filed in the name of "Pacific Supply Co., a division of P.S.C. Products Corp." The legal name of the corporate debtor, however, had been changed to "Pasco Sales Co., Inc.". The Court held that the defect was "fatal to the bank's claim" of a security interest. *Id.* at 45. Both the *Pasco* and *Leichter* decisions were issued prior to the amendment of NYUCC § 9–402; furthermore, neither of the financing statements considered therein contained any mention of the debtor's legal name.

A determination of whether there has been an error made in naming a debtor is to be on a case-by-case basis. *In re Thriftway Auto Supply, Inc.*, 159 B.R. 948, 953 (W.D.Okl.1993), *aff'd* 39 F.3d 1193 (10th Cir.1994); *In re Vaughan*, 4 UCCRS 61, 66, 1967 WL 8935 (Bankr.W.D.Mich.1967). The Court cannot agree with the conclusion reached by the court in *Centennial* in 1980. In the matter presently before this Court, there have been no allegations of a change in the name of the corporate debtor, namely BFG. Those financing statements listing

---

**10.** At a subsequent status conference held in Utica, New York, on September 19, 1996, counsel for the Trustee asserted that he had obtained a list from the Onondaga County Clerk's office which showed that of 1,010 filings, 183 were listed under the name of BFG and 827 under the

name of "Aloha Leasing, a Division of The Bennett Funding Group, Inc." The Court agreed to accept supplemental memoranda of law by the parties by September 26, 1996, addressing this issue.

"Aloha Leasing, a Division of The Bennett Funding Group, Inc.," include the name of the corporate debtor, as well as its trade name. The Trustee interprets the words "**adds** other trade names" (emphasis added) in NYUCC § 9–402(7) to require that the trade name, if it is to be listed, **follow** the legal name of the corporate debtor. The Court is not persuaded by this argument. The Court interprets the statute to allow the inclusion of a trade name(s) provided the financing statement also identifies the debtor by its corporate name, "The Bennett Funding Group, Inc." Whether the trade name precedes or follows the legal name of the debtor should not make a difference, particularly in this age of computer indexing.

This approach was followed by the United States District Court for the Eastern District of New York in *Atlas Technologies*, 78 B.R. 394. In that case, the debtor was identified on the financing statement as follows:

EFCOR Family of Companies *
535 Electric Street
Scranton, PA 18509

---

* Atlas Technologies, Inc. Property only

Above the signature line for the debtor appeared the words "EFCOR FAMILY OF COMPANIES—Atlas Tech., Inc." A rider attached to the financing statement explained that the collateral was the property of Atlas Technologies, Inc. and that EFCOR Family of Companies was acting solely as an agent for and as representative of Atlas Technologies, Inc.

The district court concluded that the financing statement was not misleading and reversed the bankruptcy court's decision. *Id.* at 400. The district court found that the financing statement should have been cross-indexed in the names of both Atlas Technologies, Inc. and EFCOR Family of Companies, and that the secured creditor should not be penalized for the filing officer's failure to do so. *Id.* (citations omitted). Indeed, the court found that the bankruptcy court had erred in considering whether the county clerk had actually indexed the financing statement under Atlas's name. The mere presentment of the financing statement for filing and the tender of the filing fee consti-

tuted "filing" pursuant to NYUCC § 9–403(1). *Id.*

NYUCC § 9–402(8) provides that a "financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." In those instances in which the debtor is identified on the financing statement as "Aloha Leasing, a Division of The Bennett Funding Group, Inc.", the financing statements do substantially comply with § 9–402's requirements by including not only the name of BFG but also its trade name such that the Court need not consider whether the listing of BFG's trade name first constituted a "minor error." The policy of Article 9 is "to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." Official Comment No. 9 to NYUCC § 9–402(8) (McKinney 1990). The emphasis of Article 9 should be "directed toward commercial realities not corporate technicalities." *Thriftway Auto Supply*, 159 B.R. at 953. As was noted by the Honorable Roy Babitt (B.J.) in *Matter of Flagstaff Foodservice Corp.*, 16 B.R. 132, 136 (Bankr.S.D.N.Y.1981),

[t]he U.C.C. is a carefully matured enactment designed to achieve needed reform in the world of commerce. Its avowed purpose was and is the codification, the simplification and the modernization of the laws governing commercial transactions. It should not be read in such way that the arcane uncertainties it sought to remove are reincarnated by the judiciary. In short, to reinstate under the general rubric of 'good faith', a rejected duty to insure proper indexing would be to pervert the intendment of this comprehensive legislation.

In an age of computers, the Court must, in rendering its decision, give consideration to what a "reasonably prudent creditor" must do in conducting a diligent search. A financing statement is intended to put creditors on notice that further inquiry is prudent. *In re Laminated Veneers Co., Inc.*, 471 F.2d 1124, 1125 (2d Cir.1973) (citing *Leichter*, 471 F.2d

785). A computer search of the words "Bennett Funding" arguably would have given notice to a potential creditor of a possible pre-existing security interest in the collateral held by the Banks even if indexed only as "Aloha Leasing, A Division of The Bennett Funding Group, Inc." In addition, there is an expectation that a reasonably prudent creditor would have reviewed the leases themselves and would have discovered that the very collateral in which it was considering taking a security interest identified the lessor as "Aloha Leasing, a Division of The Bennett Funding Group, Inc." As noted by the court in *In re Mines Tire Co., Inc.*, 194 B.R. 23, 25 (Bankr.W.D.N.Y.1996), "To the extent that human ingenuity would normally overcome the effects of any human error in the filing of a financing statement, that financing statement is to be deemed effective." Whether or not the filing officer cross-indexed the financing statements in the name of both "Aloha Leasing" and BFG should not serve to penalize the Banks which have filed financing statements.

The fact that the Banks may be able to establish a security interest in the leases prepetition does not end the Court's analysis. There are actually two types of collateral in which the Banks have asserted a security interest. There is the chattel paper, and there are the proceeds of said chattel paper. As discussed above, chattel paper in this case consists of individual leases of equipment and the monetary obligation payable at some time in the future by a lessee under the terms of a particular lease. In complying with the terms of a lease, once a lessee has made a payment, there has been a conversion of the lessee's "monetary obligation" and an ensuing reduction of the value of the chattel paper. At the same time, the actual payment represents new collateral in the form of "proceeds." *See Great–West Life & Annuity Assur. Co. v. Parke Imperial Canton, Ltd.*, 177 B.R. 843, 851 (N.D.Ohio 1994) ("Conversion" is the essential consideration in determining what constitutes "proceeds."). Thus, the rent received from the lease of the equipment constitutes "proceeds" of the lease. *In*

*re Cleary Bros. Const. Co., Inc.*, 9 B.R. 40, 41 (Bankr.S.D.Fla.1980) (*dicta*).

Code § 552(b)(1) [11] governs whether prepetition security interests in the leases extend to the lease payments received by BFG postpetition. *See Keneco Financial Group*, 131 B.R. at 93. In order for postpetition lease payments received by BFG to be subject to the Banks' security interests, the Banks must first establish that they had validly perfected security interests in the leases prepetition. *See id.* Code § 552(b)(1) also requires that there be a security agreement which contains a provision that any security interest also extends to any proceeds of the leases, i.e. the lease payments, in order for the Bank's alleged security interests to extend to lease payments acquired by the estate postpetition.

The argument has been made that if the Banks are able to establish that they have a perfected security interest in the leases, then no further proof is necessary with respect to the income stream of lease payments. Indeed, in *ICS* the Court found that possession of the chattel paper, namely the equipment schedules, "was sufficient to perfect its security interest in the lease proceeds under NYUCC § 9–305." However, the fact that the Banks may be able to establish that the security agreements do contain a provision extending their security interests to "proceeds" is not, in and of itself sufficient if they are to defeat the Trustee's claim to the "proceeds" received postpetition. Code § 552(b)(1) requires not only that the Court examine the language of the security agreements, but also that it consider **applicable nonbankruptcy law** addressing rights in the "proceeds," which in this case is § 9–306 of the NYUCC.

NYUCC § 9–306 addresses the means by which a perfected security interest in "proceeds" **continues**. Admittedly, if the Banks are able to establish that they filed proper financing statements covering their security interest in the leases, pursuant to NYUCC § 9–306(3)(b) their security interest contin-

---

11. For purposes of this decision, the Court previously indicated at the status conference on August 15, 1996, that it would not address herein

the language of Code § 552(b) which permits the Court to consider the "equities of the case" in addressing postpetition security interests.

ues as to the lease payments received by BFG postpetition in view of the fact that the Trustee acknowledges that they are identifiable cash proceeds based on the segregation of such funds pursuant to the Court's interim cash collateral orders.[12] However, in the instance where the Banks' security interests are based only on possession of the underlying collateral, namely the original leases, the analysis becomes somewhat more complex. Since an overwhelming number of the Banks have asserted that they have filed financing statements, at this juncture in the case the Court determines that it would not be in the parties' best interest to attempt to analyze the alternative scenario since it would only serve to unnecessarily delay the issuance of the Court's decision.

Therefore, having set forth the requisites for establishing perfection of a security interest in the leases, as well as a security interest in the lease proceeds based on the filing of a proper financing statement (*see* Addendum B, attached hereto, for a summary of the requisites), the Court deems it appropriate to allow the Trustee an opportunity to analyze the discovery he has received or will receive in support of the Banks' motions pursuant to the Omnibus Order of Discovery entered by the Court on July 24, 1996, and to submit particularized responses to each of the Banks' motions, including any documentary evidence to support his opposition to the security interests claimed by the individual Banks.[13] Accordingly, within 45 days of the date of this Order the Trustee shall file and serve his response to each of the Banks' motions, asserting specific objections he might have to each Bank's claim of a perfect-

ed security interest in particular leases and the income stream derived therefrom.

IT IS SO ORDERED.

## ADDENDUM A

LIST OF BANKS SEEKING RELIEF FROM THE AUTOMATIC STAY OR SEEKING ADEQUATE PROTECTION FOR USE OF CASH COLLATERAL

Alston & Bird
Attn: John C. Weitnauer
1201 W. Peach Tree St.
Atlanta, GA 303309–3424

First Federal Bank of LaGrange

Bond, Schoeneck & King
Attn: James Dati
One Lincoln Center, # 1800
Syracuse, NY 13202

Bank of Herrin, The
Berkshire County Savings Bank
Carterville State and Savings Bank
Central Bank & Trust Company
Citizens National Bank of Albion
Citizens State Bank of Shipman
First Community Bank FSB
First National Bank of Carmi
First National Bank of Ottawa
Grand Marais State Bank

DeGraff, Foy, Holt–Harris, Mealy & Kunz
Attn: John D. Rodgers
90 State Street
Albany, NY 12207

Citizens State Bank of Arlington
Citizens State Bank of Shipman
First National Bank of Newton

---

12. The motions of the Banks addressed herein requesting relief from the automatic stay primarily seek authorization from the Court for them to receive the postpetition payments directly from the lessees. NYUCC § 9–306(4) applies to security interests in proceeds received prepetition (*see In re Bumper Sales, Inc.,* 907 F.2d 1430, 1438 (4th Cir.1990)) and will not be addressed by the Court in the decision herein.

13. To date the Trustee has served only a general response to most of the Banks' motions which response contains assertions which may or may not address the specific allegations contained in a particular motion.

Hawkeye Federal Savings Bank of Boone, Iowa (700)
Oswego City Savings Bank
People's Trust Company
Republic Bank
Union Bank Company

Deily, Testa & Dautel
Attn: Jonathan D. Deily
State Street, 10th Fl.
Albany, NY 12207

Citizens National Bank of Malone
Greene County Savings Bank
National Bank of Coxsakie, The

Drinker, Biddle & Reath
Attn: Andrew C. Kassner
1100 PNB Bank Building
1345 Chestnut Street
Philadelphia, PA 19107

First Keystone FSB
Greater Delaware Valley FSB
Roxborough Manayunk FSB
Third Federal Savings Bank
Willow Grove Bank

Felt, Evans, Panzone, Bobrow & Halak
Attn: Edward D. Earl
4–6 North Park Road
Clinton, NY 13323

Tolland Bank

David L. Ganje
Executive Park North
Albany, NY 12203

English State Bank
Howard Bank, N.A., The

Green & Seifter
Attn: Robert K. Weiler
900 Lincoln Center
Syracuse, NY 13202

Metrobank
People's Bank and Trust Company, The

Hancock & Estabrook
Attn: Stephen A. Donato
1500 MONY Tower I
Syracuse, NY 13202

American Community Bank
Amerifirst Bank, NA
First National Bank of Northwest, Ohio
American State Bank and Trust of Wiliston
Androscoggin Savings Bank
Bank of Tioga
Bay Area Bank
Bay State Savings Bank
Community Bank
East Side Bank and Trust Company
First National Bank of Waconia
First Northern Bank & Trust
First State Bank of Wabasha
First State Bank, The
Firstar Bank FSB
Framingham Cooperative Bank
Gloucester Bank & Trust Company
Hibernia Savings Bank, The
Hawkeye FSB
Hudson United Bank
LaCrescent State Bank
Leavenworth National Bank & Trust Co.
Marine Midland Bank
Medway Savings Bank
Mercantile Bank of Southern Illinois
Merchants National Bank of Winona
Merchants State Bank
Mutual FSB of Plymouth County
Norwood Cooperative Bank
North Adams Hoosac Savings Bank
Oswego City Savings Bank
Park West Bank and Trust Company
Safety Fund National Bank
Sprague National Bank
Stoneham Savings Bank
Twentieth Street Bank
Western Bank of Wolfpoint
Wilbur National Bank

Harter, Secrest & Emery
Attn: Gary Karl
700 Midtown Tower
Rochester, NY 14604

Liberty Bank
South Trust County Bank of Georgia

Katten Muchin & Zavis
Attn: Mark K. Thomas
525 West Monroe St.—Suite 1600
Chicago, IL 60661–3693

Heller Financial Inc.
Heller Financial Leasing, Inc.

Kilpatrick & Cody
Attn: Todd C. Meyers
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309–4530

American National Bank
Citizens State Bank of Milford
Etowah Bank
Farmers & Merchants Bank
Monroe County Bank
Weakley County Bank

Kurtzman, Cohen, Matera & Gurock
Attn: Rosemarie E. Matera
9 Perlman Dr.
Spring Valley, NY 10977

Union State Bank

The Legal Center
Attn: Jerome Sharfman
Suite 500, One Riverfront Plaza
Newark, NJ 07102

Fidelity Federal Savings Bank

MacKenzie, Smith, Lewis, Mitchell & Hughes
Attn: Anthony R. Hanley
600 OnBank Bldg.
101 S. Salina Street
Syracuse, NY 13202

Bank of Bellevue
Central State Bank, Muscatine, Iowa

Citizens Bank, Corydon, Iowa
Citizens Bank, Leon, Iowa
Citizens Bank, Princeton, Missouri
Douglas County Bank and Trust Company
Farmers and Merchants Bank, Watertown, South Dakota
Home Federal Savings and Loan Association

Melvin & Melvin
Attn: Louis Levine
217 South Salina St.
Suite 700
Syracuse, NY 13202

Citrus Bank
ESB Bank

Ravin, Sarasohn, Cook,
Baumgarten, Fisch & Rosen
Attn: Mitchell B. Seidman
103 Eisenhower Parkway
Roseland, NJ 07068–1072

Interchange State Bank

Rossi, Murnane, Balzano & Hughes
Attn: Thomas P. Hughes
209 Elizabeth St.
Utica, NY 13503

Tucker Federal Savings and Loan

Whitelaw & Fangio
Attn: Mary Fangio
247–259 W. Fayette Street
Syracuse, NY 13202

Bank of St. Petersburg

## ADDENDUM B

The following documents are necessary in order to establish:

A. Existence of Chattel Paper

1. Lease signed by both lessor and lessee and dated

2. Identification of leased equipment by model and serial number

3. Number and amount of lease payments and an indication of when the term of the lease began

B.  Attachment of Security Interest

1. Possession of the lease or a security agreement (e.g., assignment of contracts) executed on behalf of BFG to which is attached a schedule identifying the lease by number, the lessee, term of the lease and the amount of the monthly payment; and

2. Promissory note executed in conjunction with the security agreement, which includes the relevant amortization schedule of payments to the Bank.

(The fact that BFG has rights in the leases is not disputed.)

C.  Perfection

1. Leases

a.  Filing of Financing Statement which contains:

(i) Proof of filing in both the Onondaga County Clerk's office and office of the New York Secretary of State

(ii) Name of Debtor (The Bennett Funding Group, Inc.), as well as the inclusion of any trade name is also permissible

(iii) Signature on behalf of Debtor

(iv) Address of the Bank asserting the security interest

(v) Proper mailing address of the Debtor, and

(vi) Description of the collateral, including identification of the lease, lessee, term and monthly payment, and provision for substitution/replacement of said leases/contracts, or;

b.  Possession of the Lease which contains:

(i) Name of both lessee and lessor

(ii) Identification of model and serial number of equipment

(iii) Number and amount of payments, as well as an indication of when the payments were to begin.

(iv) Original signatures on behalf of both lessor and lessee.

2. Lease Proceeds Postpetition *

a.  Filing of a Financing Statement prepetition as set forth in C.1.a. above which includes a provision which extends the security interest to all proceeds from the exchange, collection or disposition of the leases.

(The requirement that the proceeds consist of identifiable cash proceeds is not disputed.)

---

* With respect to establishing a perfected security interest in lease proceeds based on possession, the Court reserves the right to address this form of perfection if necessary in a subsequent decision since most, if not all, of the Banks assert that they have properly filed financing statements.